**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOSEPH D.G. SIMPSON, *et al.*, on behalf of themselves and all others similarly situated, | ) | Case No. 18-cv-553 |
| Plaintiffs, | ) | Judge Sharon Johnson Coleman<br>Mag. J. Sidney I. Schenkier |
| v. | ) | |
| SHERIFF TOM DART, in his official capacity, *et al*. | ) | |
| Defendants. | ) | |

and

| | | |
|---|---|---|
| LOUIS MONAE, on behalf of himself and all others similarly situated, | ) | Case No. 18-cv-424 |
| Plaintiff, | ) | Judge Sharon Johnson Coleman<br>Mag. J. Sidney I. Schenkier |
| v. | ) | |
| SHERIFF TOM DART, in his official capacity, *et al* | ) | |
| Defendants. | ) | |

**PLAINTIFFS' MOTION TO COMPEL THIRD PARTY SUBPOENA RESPONDENT INDUSTRIAL/ORGANIZATIONAL SOLUTIONS TO PRODUCE DOCUMENTS**

Plaintiffs respectfully move the Court, pursuant to Fed. R. Civ. P. 26 and 45, to compel third-party subpoena respondent Industrial/Organizational Solutions (IOS) to produce responsive documents that it has withheld from production on confidentiality and burden grounds. IOS is improperly withholding three categories of documents: (a) individual race information on IOS spreadsheets containing applicant information that IOS previously represented would be produced; (b) exam and answer key information for applicant examinations administered for the Cook County Sheriff's Merit Board ("Merit Board"); and (c) documents relating to any job analyses or validation studies conducted or designed for any examination administered by IOS

for the Cook County Sheriffs Merit Board.

## A. Background

1. This matter involves a class action brought to remedy race discrimination in employment against African Americans applying to be Correctional Officers at the Cook County Department of Corrections.

2. On November 8, 2018, Plaintiffs took the 30(b)(6) deposition of Rosemarie Nolan, Executive Director for Defendant Cook County Sheriff's Merit Board. At her deposition, Ms. Nolan stated that:

> [T]he Merit Board administers two entry level written examinations. They are -- we have a contract with the IO Solutions, Industrial Organizational Solutions, and they provide the testing materials. And we administer written examinations to the applicants. . . . And we provide -- or we test the applicants and then we provide the test booklets and the answer keys to the IO Solutions testing company so they can score the examinations."

Ex. A (Nolan Dep.) at 40.

3. Ms. Nolan further testified as follows:

> Q. . . . Is there a validation study that was done for that test that you –
>
> A. That would be something – that would definitely be something you would talk to IO Solutions about how they validate to recommend the National Criminal Justice Examination for -- for the sheriff's Merit Board.
>
> Q. Are you aware of any validation study for that, the inventory, the 200 questions?
>
> A. No. Again, I think that's -- again, that's something that they would need to address.

(Ex. A at 48.)

4. At her deposition, Ms. Nolan further testified that the race of each applicant sitting for the IOS written examinations is recorded on their Scantron answer sheet. (Ex. A at 111-12.) For that reason and others, Plaintiffs concluded (accurately, as shown below) that the IOS databases maintain records that include the race of each applicant along with their test results.

5. Because Plaintiffs require information regarding the examinations administered by IOS for a full and complete adverse impact analysis, on February 11, 2019, Plaintiffs served a subpoena on IOS seeking, among other documents:

- All examinations administered, supplied, or scored by IOS for the Cook County Sheriff's Merit Board from January 1, 2013 (**Request 2; exam information**);

- The answer keys and all documents describing the scoring examinations administered, supplied, or scored by IOS for the Cook County Sheriffs Merit Board from January 1, 2013 (**Request 3; answer key information**);

- Any database, spreadsheet, or other document containing records of applicants for the position of correctional officer who took any examination administered, supplied, or scored by IOS for the Cook County Sheriff's Merit Board from January 1, 2013 to the present (**Request 4; records of applications**);

- The spreadsheets, databases, or paper documents into which any information from a Scantron or other testing form was imported, entered, or copied from any examination administered, supplied, or scored by IOS for the Cook County Sheriff's Merit Board, from January 1, 2013 to the present (**Request 8; database of information from Scantrons, including race information**); and

- All documents and communications relating to any job analyses or validation studies conducted or designed for any examination administered by IOS for the Cook County Sheriffs Merit Board (**Request 10; validation study information**).

Ex. B (Subpoena to IOS).

## B. IOS's Objections to Requests Subpoena and Court's Entry of Confidentiality Order

6. On March 12, 2019, IOS objected to Request 4 (records of applicants) on the grounds of vagueness, breadth, and burden, but stated that without waiving its objection, IOS

would produce responsive documents upon entry of a confidentiality order. (Ex. C, 3/12/19 Responses and Objections.) IOS objected to Request 8 (database of information from Scantrons, including race information) on the ground that is was duplicative of Request 4. (*Id*.)

7. IOS also objected to producing documents under Request 2 (exam information) and Request 3 (answer key information) on confidentiality grounds, and Request 10 (validation study information) on the grounds of burden and proportionality. (Ex. C, 3/12/19 Responses and Objections.)

8. In correspondence accompanying their objections, counsel for IOS stated that "IOS will produce documents upon entry of an agreed confidentiality order that restricts disclosure of documents produced by IOS. IOS is prepared to produce the documents mentioned in its Response as soon as that order is entered." (Ex. D at 1 (3/12/19 Email from Ms. Mintzer).)

9. In an email dated April 9, 2019, counsel for IOS stated that "[w]e will produce documents in response to Request No. 4 [records of applicants] in the same format provided by IOS, excel documents. The social security numbers will be deleted from the files to protect the individual's information. *The deletion of the social security numbers in no way affects the other columns that are included in the documents.*" (Ex. E at 9 (4/9/19 Email from Ms. Mintzer) (emphasis added).)

10. On May 28, 2019, counsel for Plaintiffs specifically asked counsel for IOS: "You also indicated that the excel file being produced related to item 4 in your April 9, 2019 email below will include individual names and scores. Can you please inform us what other fields are included in the spreadsheet and confirm that it includes every field of information collected by I/O Solutions other than the SSNs?" (Ex. E at 6 (5/28/19 Email from Mr. Badlani).) Counsel for IOS responded that "*[t]he excel files include every field of information collected by IOS* other

than the individuals' social security numbers. We are able to produce this information once the confidentiality order is entered." (Ex. E at 5 (6/14/19 Email from Ms. Mintzer) (emphasis added).)

11. On June 7, 2019, counsel for IOS agreed to edits to a proposed amended confidentiality order, which included language specifically stating that "those in possession of test questions or answer keys shall securely maintain the test questions or answer keys and shall take such other steps as would be appropriate for the protection of similar highly confidential information such as trade secrets, personal identifying information or personal health information." (*See* No. 18-cv-553, ECF No. 123 at ¶ 6(d); *see also* Ex. F, 6/7/19 email from Ms. Mintzer.)

12. On June 13, 2019, this Court entered the Amended Confidentiality Order. *See* No. 18-cv-553, ECF No. 123 at ¶ 6(d).

### C. IOS's Continued Objections to Requests 2, 3 and 10 Despite Entry of Confidentiality Order are Unfounded.

13. On June 14, 2019, counsel for IOS stated that despite the Amended Confidentiality Order, IOS would still object to providing exam (Request 2) and answer key (Request 3) information, and that it was also objecting to producing any job analyses or studies conducted for any exams used by Cook County, including those conducted generally for exams used by Cook County because of the confidential information they contain (Request 10). (Ex. E at 5 (6/14/19 email from Ms. Mintzer).)

14. On June 20, 2019, Counsel for Plaintiffs and Counsel for IOS held a meet and confer by telephone pursuant to LR 37.2. During that call, counsel for IOS stated that IOS was maintaining its confidentiality objections to Requests 2, 3, and 10 despite the Amended Confidentiality Order. Counsel for IOS also raised a burden objection on the grounds that

Plaintiffs could obtain the documents being sought through the subpoena directly from the Defendants.

15. On June 25, 2019, IOS produced documents Bates Stamped IOS0000001-IOS036727, which did not include documents responsive to Requests 2, 3 and 10.

16. On July 9, 2019, prior to moving to compel IOS, Plaintiffs informed Defendants of IOS' position regarding Requests 2, 3 and 10, and asked whether Defendants would agree to produce exam and answer key information, as well as all documents and communications relating to any job analyses or validation studies conducted or designed for any examination administered by IOS for the Cook County Sheriff's Merit Board under the Mandatory Initial Discovery Pilot, or, with respect to the validation-related documents, stipulate that no validation study was performed before or during the use of tests provided by IOS. (Ex. G at 4 (7/9/19 email from Mr. Badlani).)

17. At a status conference before this Court on July 24, 2019, Defendants indicated that they would inform Plaintiffs as to whether they were in possession of exam, answer key and validation documents (Requests 2, 3 and 10), and if so, if they would agree to produce them. Counsel for Plaintiffs followed up by email that same day asking for Defendants' position on producing such information within two days. (Ex. G at 2 (7/24/19 Email from Mr. Badlani).)

18. On August 9, Plaintiffs sought a LR 37.2 Conference with Defendants on the issue of their position regarding exam and answer key information and validation documents. (Ex. G at 1 (8/9/19 Email from Mr. Badlani).) To date, Defendants have not responded to the request for a conference, nor provided Plaintiffs with their position on the requested documents or a stipulation.

19. IOS's objections based on confidentiality are unfounded. The cases cited in their

objections (*see* Ex. C) are inapposite given the entry of the Amended Confidentiality Order in this case, and their failure to identify any additional required protections. In *Detroit Edison Co. v. NLRB*, 440 U.S. 301, 304 (1979), cited by IOS, the Supreme Court addressed the requirement to provide aptitude tests and answer sheets *directly* to a union bargaining representative under the National Labor Relations Act's provision placing a duty on an employer to provide relevant information to a bargaining representative. It did not involve a subpoena under Fed. R. Civ. P. 45 or discovery under Fed. R. Civ. P. 26, nor was there an "attorneys' eyes only" designation for any of the material sought, as there is here. (*See* No. 18-cv-553, ECF No. 123 at ¶ 6(d)). Similarly, the court in *EEOC v. City of Milwaukee*, 54 F. Supp. 2d 885, 893 (E.D. Wis. 1999), ordered the defendant to comply with subpoenas issued by the EEOC given that "EEOC procedures effectively guard against dissemination."

20. Here, Plaintiffs, Defendants, and IOS thoroughly negotiated an Amended Confidentiality Order addressing maintenance of exams and answer keys, and IOS has not identified what additional safeguards it would require. *See also EEOC v. C&P Telephone Co.*, 813 F. Supp. 874 (D.D.C. 1993) (stating that "[t]he need for confidentiality is not a valid basis to refuse to comply with a subpoena" and requiring confidentiality agreement); *E.E.O.C. v. Aon Consulting, Inc.*, 149 F. Supp. 2d 601, 609 (S.D. Ind. 2001) (requiring compliance with subpoena on the condition of a written confidentiality agreement).

**D. IOS's Continued Objections to Requests 4 and 8 Despite Prior Representations and Despite Entry of Confidentiality Order Are Unfounded.**

1. On July 19, 2019, counsel for Plaintiffs notified counsel for IOS that approximately 359 spreadsheets produced to Plaintiffs with applicants' names and test scores did not include race information—even though IOS maintains race information for each applicant in its database and despite its prior commitment to include race information in the spreadsheets

produced in response to the subpoena (Requests 4 and 8). (*See* Ex. E at 3 (7/19/19 Email from Mr. Badlani); *id*. at 9 (4/9/19 Email from Ms. Mintzer, indicating that IOS *would* produce all data fields other than social security numbers).) IOS's omission of race information can only be explained as an intentional act: some individual made a decision to omit race information from the reports generated in response to the subpoena.

2. On July 26, 2019, Counsel for Plaintiffs and Counsel for IOS held a meet and confer by telephone pursuant to LR 37.2 on the missing race information (Requests 4 and 8). During that call, counsel for IOS for the first time indicated that the statements in her emails of April 9, 2019 and June 14, 2019—that the excel files IOS would produce included *every* field of information collected by IOS other than social security numbers—were misstatements. She confirmed again that IOS does maintain in its "SPSS"[1] database files, data on individual applicants' age, race, gender, education, and exam and answer information, which it omitted from the Excel files. However, Counsel for IOS for the first time stated that IOS is objecting to producing Excel files containing a column for race on the ground of "burden," despite no articulation of the specific burden, and despite IOS' prior statements to the contrary. (Ex. E at 1 (7/26/19 Email from Mr. Badlani).)

3. Including a column for each applicant's race in Excel reports generated from an SPSS database is not a "burden." IOS did not even raise a burden objection in response to Plaintiffs' Request 8. *Id.* Further, even now, IOS has failed to articulate any specific burden—nor could it. There is no burden associated with producing information already maintained in a database. *See E.E.O.C. v. Aerotek, Inc.*, 815 F.3d 328, 334 (7th Cir. 2016) (affirming order

[1] SPSS is an acronym for what was known as the Statistical Package for Social Sciences and is now marketed by IBM as "SPSS Statistics." See https://www.ibm.com/analytics/spss-statistics-software (visited August 14, 2019). SPSS is a software package used widely to conduct statistical analysis. SPSS data is easily exported to Excel. *See* https://www.ibm.com/support/knowledgecenter/en/SSLVMB_26.0.0/statistics_spsstut_project_ddita/spss/tutorials/outputtut_msapps.html (visited August 14, 2019).

compelling production and finding that "[t]he actual process of producing the data imposes little burden on Aerotek because the company maintains a database containing all of the requested information").

4. It was IOS's duty to include race information in the reports from its SPSS database. To the extent it is a "burden" on IOS to generate new reports with applicant race data, that burden is self-generated: producing new reports is only necessary because IOS omitted race data to begin with.

5. In summary, IOS's belated objection to producing race information that it maintains in its SPSS database, which is readily accessible and it previously committed to provide in response to Plaintiffs' subpoena, cannot stand. Instead, IOS should be compelled to produce race information in the format requested.

6. Finally, while IOS has produced tens of thousands of individual scantrons including names and race information, given that IOS maintains race data in its SPSS data and prior statements that race information would be produced in Excel, Plaintiffs should not bear the burden of creating their own database from the individual Scantron sheets. Plaintiffs should not be required to create a database when the data already exist—*as data*.

**WHEREFORE** for the reasons set forth above, Plaintiffs request that the Court compel Third Party Subpoena Respondent IOS to produce documents responsive to Requests 2, 3, 4, 8 and 10 of the February 11, 2019 Subpoena.

Dated: August 16, 2019          Respectfully submitted,

/s/ Chirag G. Badlani
One of the attorneys for Plaintiffs

Marni Willenson
marni@willensonlaw.com
WILLENSON LAW, LLC
542 S. Dearborn St., Ste. 610
Chicago, IL 60605
(312) 508-5380
(312) 508-5382 Fax


Cyrus Mehri
CMehri@findjustice.com
Ellen Eardley
EEardley@findjustice.com
Michael Lieder
MLieder@findjustice.com
MEHRI & SKALET, PLLC
1250 Connecticut Ave., NW, Ste. 300
Washington, D.C. 20036
202.822.5100

Matthew J. Piers
mpiers@hsplegal.com
Caryn C. Lederer
clederer@hsplegal.com
Chirag G. Badlani
cbadlani@hsplegal.com
HUGHES SOCOL PIERS RESNICK & DYM, LTD.
70 W. Madison Street, Suite 4000
Chicago, IL 60602
312.580.0100


Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on August 16, 2019, I caused a copy of the foregoing document to be served via the electronic case file system upon counsel of record for the Defendants. I certify that on August 16, 2019, I caused a copy of the foregoing document to be served via email and First Class Mail to:

Rebekah S. Mintzer
Golan Christie Taglia, LLP
70 West Madison St., Suite 1500
Chicago, IL 60602
RSMintzer@GCT.law
*Counsel for Industrial/Organizational Solutions*

/s/ Chirag G. Badlani
One of the attorneys for Plaintiffs