IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSEPH D.G. SIMPSON, et al., ) | |
| ) | Case No. 18-cv-0553 |
| Plaintiffs, ) | |
| ) | Judge Sharon Johnson Coleman |
| v. ) | |
| ) | |
| SHERIFF TOM DART, in his official ) | |
| capacity, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Joseph D.G. Simpson, Frederick Merkerson, Maurice Richardson, and Jonathan Harris, on behalf of themselves and all others similarly situated, filed the present lawsuit challenging the hiring practices for correctional officers at the Cook County Department of Corrections ("CCDOC") as racially discriminatory against African-Americans in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, Section 1981 of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981, the Illinois Civil Rights Act, 740 ILCS 23/5(a)(1), and the Equal Protection Clause of the United States Constitution.[1] Plaintiffs are suing both the Cook County Sheriff's Office ("Sheriff's Office") and the Cook County Sheriff's Merit Board's ("Merit Board") based on theories of disparate impact and discriminatory intent.

Plaintiffs have moved to bar certain opinions of defendants' labor economics rebuttal expert Dr. Jonathan Guryan pursuant to the Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Defendants retained Dr. Guryan to review and respond to plaintiffs' expert, Dr. Charles Scherbaum. Particularly relevant to this *Daubert* motion is plaintiffs' disparate impact claims. For the following reasons, the Court, in its discretion, grants in part and denies in part plaintiffs' *Daubert* motion.

---
[1] The related case in this matter is *Monae v. Cook County Sheriff's Office*, 18-cv-0424.

**LEGAL STANDARD**

Rule 702 and *Daubert* require district judges to act as gatekeepers to ensure that proposed expert testimony is both reliable and relevant. *Kirk v. Clark Equip. Co.,* 991 F.3d 865, 872 (7th Cir. 2021). When determining reliability, the Court's role is to assess if the expert is qualified in the relevant field and to examine the methodology he used in reaching his conclusions. *Timm v. Goodyear Dunlop Tires North Am., Ltd.*, 932 F.3d 986, 993 (7th Cir. 2019). To be relevant, expert testimony must "help the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702.

A district court's gatekeeping evaluation of expert testimony does not take the jury's place in deciding the issues of accuracy or credibility. *Clark v. River Metals Recycling, LLC*, 929 F.3d 434, 438 (7th Cir. 2019). Once the district court determines that "the proposed expert testimony meets the *Daubert* threshold of relevance and reliability, the accuracy of the actual evidence is to be tested before the jury with the familiar tools of 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" *Lapsley v. Xtek, Inc.,* 689 F.3d 802, 805 (7th Cir. 2012) (quoting *Daubert*, 509 U.S. at 596). The expert's proponent has the burden of establishing the admissibility of his opinions by a preponderance of the evidence. *Varlen Corp. v. Liberty Mutual Ins. Co.*, 924 F.3d 456, 459 (7th Cir. 2019).

**ANALYSIS**

Plaintiffs do not challenge Dr. Guryan's qualifications. Instead, they argue that: (1) Dr. Guryan's report contains impermissible legal opinions about whether steps in the hiring process were discriminatory; (2) certain opinions are based on circular reasoning or misstatements of law; (3) other opinions misapply the concept of similarly situated employees contradicting Seventh Circuit precedent; and (4) Dr. Guryan's disparate impact analysis is based on speculation. The Court addresses each argument in turn.

*Legal Opinions*

Plaintiffs first contend that ¶¶ 8, 11, 12, 23, 30, 33, 36, 39, and 40 of Dr. Guryan's revised rebuttal report impermissibly opine that Dr. Scherbaum's analysis "does not test for discrimination" and that the pattern of disparate hiring Dr. Scherbaum identified "cannot be the result of discrimination." Although "[e]xpert opinions on ultimate issues are not categorically impermissible," *United States v. Brown*, 871 F.3d 532, 539 (7th Cir. 2017), "Rules 702 and 704 'prohibit experts from offering opinions about legal issues that will determine the outcome of a case.'" *Roundy's Inc. v. N.L.R.B.*, 674 F.3d 638, 648 (7th Cir. 2012) (citation omitted); *see also Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013) ("an expert may not offer legal opinions").

Although it is permissible for Dr. Guryan to testify about the shortcomings involved in Dr. Scherbaum's analysis in these and other paragraphs of his report, he cannot testify that Dr. Scherbaum's analysis "cannot be the result of discrimination" because that is a legal conclusion which is outcome determinative, and thus a question for the jury to decide once the Court instructs it on the law. *See Jimenez*, 732 F.3d at 721. Another judge in this district faced a similar *Daubert* challenge explaining that as part of their case, plaintiffs must show defendants discriminated against them based on their race and that "discrimination" has a specific legal meaning that is more precise than the lay understanding of the term. *Chicago Teachers Union, Local 1 v. Board of Ed. of City of Chicago*, No. 12 C 10311, 2020 WL 914881, at *13 (N.D. Ill. Feb. 25, 2020) (Ellis, J.). The Court agrees.

Meanwhile, when asked what he meant by discrimination at his deposition, Dr. Guryan explained that he defines discrimination as unjust treatment of similarly situated people on the basis of race, which only confuses the issue because he uses other legal terms in his definition. In any event, whether Dr. Guryan used discrimination as a layperson does not change the Court's analysis that he cannot testify to the legal conclusion he presents in his report, especially in light of the potential to confuse the jury.

3

Defendants' arguments that Dr. Guryan should be allowed to testify about this legal conclusion are misplaced. For example, defendants characterize this conclusion as "the ultimate" issue, but ultimate issues pertain to factual issues, not legal conclusions. *See, e.g., Miksis v. Howard*, 106 F.3d 754, 762 (7th Cir. 1997); *Pike v. Premier Transp. & Warehousing, Inc.,* No. 13 C 8835 2016 WL 6599940, at *4 (N.D. Ill. Nov. 8, 2016) (Rowland, J.). Defendants further argue that Dr. Guryan's legal opinions are appropriate because he was responding to Dr. Scherbaum's expert report, but, as Dr. Guryan stated in his report, "the word 'discrimination' cannot be found in the body of the Scherbaum Report." (196-2, Revised Expert Rebuttal Report ¶ 23.)

The Court therefore grants this aspect of plaintiffs' *Daubert* motion in that Dr. Guryan can testify to the shortcomings involved in Dr. Scherbaum's analysis in these and other paragraphs of his report, but he cannot opine as to the legal conclusion that Dr. Scherbaum's analyses "cannot be the result of discrimination" or any other legal conclusion about "discrimination" as understood as a legal term of art.

*Misstatements of Law*

In a similar vein, plaintiffs take issue with Dr. Guryan's opinions that if the written and physical ability tests that candidates must take were valid and fairly administered in a consistent fashion, any differences in the selection rates cannot be the result of discrimination. Plaintiffs argue that not only do these opinions contain a legal conclusion, but Dr. Guryan engaged in circular or speculative reasoning. More precisely, it appears that plaintiffs are arguing Dr. Guryan did not use a reliable methodology or reliable reasoning in forming these opinions. In determining reliability, a "critical inquiry is whether there is a connection between the data employed and the opinion offered; it is the opinion connected to existing data 'only by the *ipse dixit* of the expert,' that is properly excluded under Rule 702." *Manpower, Inc. v. Insurance Co. of Penn.*, 732 F.3d 796, 806 (7th Cir. 2013) (quotation omitted).

4

Although he discusses the data Dr. Scherbaum employed, Dr. Guryan simply states that "Dr. Scherbaum fails to acknowledge that there is no evidence that candidate test scores were affected by discrimination, and I am not aware of any evidence that suggests that test was administered in a discriminatory way or that the score threshold was different for different race groups." He thus concludes that Dr. Scherbaum's analysis "cannot be the result of discrimination." In coming to this legal conclusion, Dr. Guryan takes too great of an analytic leap between him not being aware of the tests being discriminatorily administered and his legal conclusion. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997). The Court therefore grants this aspect of plaintiffs' *Daubert* motion.

*Similarly Situated*

Plaintiffs also contend that certain statements in ¶¶ 8, 60, and 65 of Dr. Guryan's rebuttal report misapply the legal concept of similarly situated employees in contradiction of Seventh Circuit law. Under Seventh Circuit law, whether an employer treated a similarly situated employee outside of the protected class more favorably is one element in a prima facie case of discrimination, which is an evidentiary standard used at summary judgment. *Rozumalski v. W.F. Baird & Associates, Ltd.*, 937 F.3d 919, 927 (7th Cir. 2019). Although "similarly situated employee" is a legal term, Dr. Guryan's opinion in ¶ 8 does not make any legal conclusions or apply the similarly situated test, but summarizes his opinion about the shortcomings in Dr. Scherbaum's analysis. Similarly, in ¶ 60, Dr. Guryan merely states that "logistic regression can be applied to gain a better understanding of whether or not there is a systematic 'shortfall' by race of similarly situated applicants." Again, he is not making a legal conclusion that is outcome determinative, but is introducing his application of the logistical regression analysis that he employed. Finally, ¶ 65 makes no mention of similarly situated or skilled employees, but explains his regression analysis. The Court denies plaintiffs' motion to bar these opinions.

*Dr. Guryan's Regression Analysis*

Last, plaintiffs challenge the expert opinions in ¶¶ 49-86 arguing that Dr. Guryan speculates that certain "facially neutral factors" might explain part or all of the racially disparate outcomes. Plaintiffs explain that defendants inject subjectivity into the hiring process, including the Merit Board's final review, the Sheriff Office's polygraph/administrative review, and Sheriff Office's panel interview. They state that these subjective steps are not made by reference to any objective criteria, but are made on changing sets of "disqualification" factors.

As to the challenged opinions, plaintiffs argue that Dr. Guryan hypothesizes that decisions made at these steps might be explained by factors like educational levels, criminal conviction histories, or prior work experience, if these factors were considered. They argue because Dr. Guryan did not know if these factors were considered, his opinion is unreliable because they are not based on verifiable facts. Plaintiffs' arguments are misplaced.

In forming these opinions, Dr. Guryan was not "hypothesizing," but instead, he conducted a regression analysis, which "permits the comparison between an outcome (called the dependent variable) and one or more factors (called independent variables) that may be related to that outcome." *Manpower*, 732 F.3d at 808. From their cursory argument, it appears that plaintiffs are challenging the variables that Dr. Guryan used, namely, educational levels, criminal conviction histories, and prior work experience, but "the selection of the variables to include in a regression analysis is normally a question that goes to the probative weight of the analysis rather than to its admissibility." *Id.* Moreover, as Dr. Guryan explains in his rebuttal report, he gleaned these variables from records the Merit Board collected for each applicant during the hiring process. Thus, his regression analysis is based on quantifiable, verifiable facts, despite plaintiffs' argument to the contrary. The Court denies plaintiffs' motion to bar these opinions.

**Conclusion**

Based on the foregoing, the Court, in its discretion, grants in part and denies in part plaintiffs' *Daubert* motion [195].

Date: 5/12/2021          Entered: _____
                                  SHARON JOHNSON COLEMAN
                                  United States District Judge