IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSEPH D.G. SIMPSON, *et al.*, | ) |
| | ) Case No. 18-cv-553 |
| Plaintiffs, | ) |
| | ) Judge Sharon Johnson Coleman |
| v. | ) |
| | ) Mag. J. Heather K. McShain |
| SHERIFF TOM DART, in his official capacity, *et al*. | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN LIGHT OF
THE SEVENTH CIRCUIT'S DECISION ON CLASS CERTIFICATION**

The Seventh Circuit has remanded this case for the Court to reconsider certifying the "exam" classes, consistent with its "observations and the remaining Rule 23 factors." Opinion at 12, *Simpson v. Dart*, No. 21-8028 (7th Cir. Jan. 6, 2022), ECF No. 354. This supplemental brief, applying the Seventh Circuit's observations and Rule 23, explains why the exam classes should now be certified.

The Seventh Circuit made three primary "observations." The first was that disparate impact claims challenging exams "almost necessarily present questions common to the class"—including "whether those exams in fact caused a disparate impact" and, if so, "whether the use of the exams was justified by business necessity." *Id.* at 9. The second was that it is irrelevant to Rule 23 commonality whether either (1) plaintiffs' disparate impact statistics have "controlled for racially neutral factors" or (2) a challenged test has "been validated for use at other departments." *Id.*[1] Third, the Seventh Circuit recommended that in reconsidering class

---

[1] Even at summary judgment, Defendants will not be able to "escape liability by showing that the disparate impact is attributable to particular background factors" rather than race. *Gulino v. Bd. of Educ.*, 236 F. Supp. 2d 314, 341 (S.D.N.Y. 2002) (quoting *Ass'n of Mexican American Educators v. California*,

certification, this Court should break down the proposed class claims "into their constituent elements." *Id.* at 12.

Considering the Seventh Circuit's guidance, this supplemental brief begins by specifying the exam claims, then breaks them into their constituent elements, and finishes by applying the Rule 23(a) and Rule 23(b) factors to them.

### I. The Four Exam Claims.

This case presents four exam claims ripe for class certification. Previously, Plaintiffs had specified three, by framing the challenge to the Merit Board's first written exam as one claim. But the first written exam was modified in April 2016. Applicants who sat for the test before that date uniformly took one version, and applicants who sat for the test later took another (but still uniform) version. Dividing the challenge to the first written exam into two claims, one on behalf of applicants who took the test before April 2016 and another on behalf of the rest, accounts for that change. The substance of each of the four exam claims is as follows:

> **Claim 1**: Between 2014 and April 2016, the Defendants[2] had a uniform practice of rejecting all applicants who scored below a composite of 75 on the two sections of the "first written test" (a written cognitive abilities and "integrity" test, called the $NCJOSI^2$). That employment practice had a disparate impact on Black applicants, which was not justified by business necessity and therefore violated Title VII (and the Illinois Civil Rights Act, which uses the same disparate impact liability standard as Title VII). This claim belongs to all Black applicants rejected because they scored below 75 on the $NCJOSI^2$

---

937 F. Supp. 1397, 1410 (N.D. Cal. 1996)). Through its prohibition on disparate impact, Title VII outlaws employment practices that have a discriminatory *effect* on a protected group. Disparate *treatment* asks whether race *caused* an adverse outcome. But disparate *impact* does not. Under Title VII, if there is disparate impact, and no job-related business necessity justifies it, "it does not matter *why* the disparate impact exists." *Id.* (emphasis in original).

[2] The $NCJOSI^2$ is administered by the Merit Board, but as the Seventh Circuit and this Court have both recognized, the CCSO oversees hiring, with the Merit Board functioning, in practice, as the CCSO's delegee or agent. Opinion at 3, *Simpson v. Dart*, No. 21-8028 (7th Cir. Jan. 6, 2022), ECF No. 354 ("The [CCSO] oversees all operations, including … hiring … [although] hiring authority is delegated [to the Merit Board]"); see also ECF No. 131 at 3 ("[T]he Merit Board … acts as an agent of the Cook County Sheriff's Department, which delegates certain employment functions to it"); *Coleman v. Sheriff of Cook Cnty.*, No. 16 C 2682, 2018 WL 3740558, at *5 (N.D. Ill. Aug. 7, 2018) (Durkin, J.) (recognizing that the Merit Board acts as the Sheriff's agent for purposes of Title VII liability).

before April 2016, within the limitations period. (The last section of this brief addresses limitations questions).

**Claim 2:** In April 2016, the Defendants modified the NCJOSI$^2$, including by reducing the passing score from a composite score of 75 to a composite score of 70. The test continued to have disparate impact, which still was not justified by business necessity and therefore violates Title VII (and the Illinois Civil Rights Act). This claim belongs to Black applicants rejected because they scored below 70 on the modified NCJOSI$^2$ during or after April 2016.

**Claim 3:** Applicants who "pass" the first written test must then "pass" a second written exam (a "situation-based" assessment called the SBSA-LEO), which Defendants use with a passing score of 70. That employment practice has a disparate impact against Black applicants, which is not justified by business necessity and therefore violates Title VII (and the Illinois Civil Rights Act). This claim belongs to Black applicants rejected because they did not attain a passing score on the SBSA-LEO, within the limitations period.

**Claim 4**: The Merit Board also rejects any applicant who fails its physical abilities test (the PAT). That employment practice likewise has a disparate impact against Black applicants, which is not justified by business necessity and therefore violates Title VII (and the Illinois Civil Rights Act). This claim belongs to all Black applicants rejected because of their performance on the PAT within the limitations period.

Once these claims are proved, the available remedies will be the conventional remedies used in Title VII hiring class actions: (1) a class-wide declaration that each challenged exam, as used by Defendants, had a disparate impact against Black applicants and was neither job related nor consistent with business necessity; (2) a class-wide injunction barring Defendants from using the exam in the future;$^3$ and (3) "rightful place" priority hiring relief and backpay, based on a

---

$^3$ In a Title VII case, a district court "has not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975); see also *Guardians Ass'n of New York City Police Dept., Inc. v. Civil Serv. Comm'n,* 630 F.2d 79, 108 (2d Cir. 1980) ("When it has been established that a selection procedure has been unlawfully used, an appropriate compliance remedy should forbid the use of that procedure, or its disparate racial impact, and may properly assure the establishment of a lawful new procedure.").

class-wide assessment of how many additional positions Black applicants would have secured absent discrimination.[4]

## II. The Elements of the Claims

The Seventh Circuit recommended that class certification be assessed by breaking the exam claims down into their constituent elements.

All four of the disparate-impact exam claims have the same three elements, which are established by statute. 42 U.S.C. § 2000e–2(k). First, Plaintiffs must prove that Defendants' rejection of applicants based on exam scores had an adverse impact on Black applicants. With that established, the burden of proof shifts to Defendants for the second element. They must show that, despite the exam's adverse impact, their uniform practice of rejecting applicants based on exam scores was "job related for the position in question and consistent with business necessity." 42 U.S.C. § 2000e-2(k)(1)(A)(i). Typically, the evidence on this point (sometimes called evidence of an employment practice's "validity") boils down to a battle of the experts. Third, assuming Defendants can show that their use of the exam and its scores to screen applicants were "valid," then Title VII allows Plaintiffs to rebut that showing by demonstrating that, by adopting a "less discriminatory alternative" employment practice, Defendants could have reduced or avoided the disparate impact without compromising legitimate objectives. 42 U.S.C. § 2000e-2(k)(1)(A)(ii), (C); *Ernst v. City of Chicago*, 837 F.3d 788, 793 (7th Cir. 2016).

---

[4] Regarding Title VII's goal of "make whole" relief and the scope of rightful place hiring and backpay, see generally *United States v. City of New York*, 847 F. Supp. 2d 395 (E.D.N.Y. 2012), and *Lewis v. City of Chicago*, No. 98 C 5596 (N.D. Ill., Aug. 17, 2011), ECF No. 470 (Remedial Order) (copy attached as Exhibit A hereto). See also *Smith v. City of Boston*, 460 F. Supp. 3d 51, 59 (D. Mass. 2020) ("Since each plaintiff suffered at least a diminished chance of employment as a result of" not passing the challenged test, "they are all entitled to make-whole relief," even though "it is 'speculative' how the ultimate employment hiring … decision [would have] shake[n] out").

### III. Applying Rule 23 to the Claims

Following the Seventh Circuit's instructions, the next step in analyzing class certification is to assess the application of Rule 23's prerequisites to the four exam claims. Those prerequisites are numerosity, commonality, typicality, adequacy, predominance, and superiority.

Defendants have never contested **Rule 23(a)(1) numerosity**. As a rule of thumb, forty or more persons is sufficient for a class. Every proposed class here is larger than that. See ECF No. 235 at 5 & n.4 (Pls.' Consolidated Reply Memo in Support of Class Certification).

To satisfy **Rule 23(a)(2) commonality**, "[e]ven a single [common] question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). Here, all four exam claims present at least three common liability questions: (1) whether the exam had an adverse impact against Black applicants; (2) whether, despite that impact, rejecting applicants who did not attain a "passing" score was job related and consistent with business necessity; and (3) whether Defendants could have adopted alternative hiring practices, with equal or greater validity, that would have reduced or eliminated the disparate impact.[5] These are not just common questions. They are also qualitatively the most important liability questions, which is why, as the Seventh Circuit noted, disparate-impact testing cases like this one "most often" do not require a "searching commonality inquiry." Opinion at 2, *Simpson v. Dart*, No. 21-8028 (7th Cir. Jan. 6, 2022), ECF No. 354. The Supreme Court has been even more emphatic on this point, stating that

---

[5] The fourth claim here, challenging the PAT, has another common question: whether, as Defendants contend, their reliance on a PAT established not by them but by the Illinois Law Enforcement Training and Standards Board should preclude Title VII liability. That is a merits, not a Rule 23, question, which will be addressed at summary judgment, and the answer will be that there is no such defense. *Dothard v. Rawlinson*, 433 U.S. 321 (1977) (public employer's minimum height and weight standards violated Title VII despite their establishment by state statute); *Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 380 (2d Cir. 2006) (fact that Board of Education's use of a teacher certification test was required by the State was "no defense to Title VII liability"); *Reese v. Source 4 Teachers*, No. 17-4588, 2018 U.S. Dist. LEXIS 133335, at *12-13 (E.D. Pa. Aug. 8, 2018) (rejecting employer's argument that its refusal to hire individuals with certain felony convictions, disparately impacting Black men, is not a "practice" or "policy" but a requirement of Pennsylvania law).

an action "on behalf of every applicant or employee" prejudiced by an allegedly biased hiring test "clearly" satisfies the commonality requirement of Rule 23(a). *Wal-Mart Stores, Inc.*, 564 U.S. at 353.[6] Cases challenging employment testing on disparate impact grounds under Title VII only rarely, if ever, present obstacles for class certification; they are very consistently certified.[7]

**Rule 23(a) typicality.** When a class plaintiff's claims "arise from the same event, practice, or course of conduct that gives rise to the claims of other class members and if his or her claims are based on the same legal theory," they are typical. 1 Newberg on Class Actions ("Newberg") § 3:29 (5th ed.). This typicality **"turns on the defendant's actions toward the plaintiff class, not particularized defenses against individual class members."** *Orlowski v. Dominick's Finer Foods,* 172 F.R.D. 370, 374 (N.D. Ill. 1997). And the class representative's claim "need not be identical to those of the class," *id.,* but only share "the same essential characteristics as the claims of the class at large." *De La Fuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983).

Every class representative here and all members of their proposed class experienced the same injurious employment practice. All took the same hiring exam and were rejected for the same reason—because they scored below the "passing" score—giving rise to a shared Title VII

---

[6] A "biased" employment practice for purposes of Title VII disparate impact is one that disproportionately excludes a protected group without a job-related justification. Title VII disparate impact law does not ask about, or require proof of, the reason(s) an employment practice has a disparate impact. "It does not matter *why* the disparate impact exists," only that it does. *Gulino*, 236 F. Supp. 2d at 341 (quoting *Ass'n of Mexican American Educators*, 937 F. Supp. at 1410). Plaintiffs have no burden to explain how or why a standardized test has a disparate impact—or to show either biased administration of the test or that decisionmakers adopted the practice intending to disadvantage a protected group. 42 U.S.C. § 2000e-2(k)(l)(A)(i).

[7] See *Lewis v. City of Chicago*, 560 U.S. 205 (2010) (class of Black firefighter applicants challenging a written hiring test); *Gulino v. Bd. of Educ.*, No. 96 CV 8414, 2013 U.S. Dist. LEXIS 123948 (S.D.N.Y. Aug. 29, 2013) (class of African-American and Latino teachers challenging school-teacher licensing exams); *United States v. City of New York*, 276 F.R.D. 22, 44 (E.D.N.Y. 2011) (class of Black applicants challenging discriminatory written hiring procedures); *Easterling v. Conn., Dept. of Corr.,* 265 F.R.D. 45, 48 (D. Conn. 2010) (class of women challenging an employer's physical fitness test).

disparate impact claim, presenting the same common questions: (1) Did the exam have an adverse impact? (2) Was the exam "job related" (or "valid")? (3) Could the adverse impact have been reduced by replacing the exam with a "lesser discriminatory alternative"?

As the Supreme Court emphasized in *Wal-Mart*, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." 564 U.S. at 349 n.5. The overlap in claims that establishes commonality here also ensures typicality.[8]

**Rule 23(a)(4) adequacy.** The focus of the adequacy prong is on whether a proposed class representative has a material conflict of interest with other class members. "Only conflicts that are fundamental to the suit and that go to the heart of the litigation" bear on adequacy, and to be disqualifying any such conflict must also be "manifest at the time of certification rather than dependent on some future event or turn in the litigation that might never occur." Newberg § 3:58. No such actual or disabling conflicts have been shown here. The subject of Rule 23(a)(4) adequacy has been addressed before as part of class certification briefing (see ECF No. 237 at 20-25); Plaintiffs refer the Court to that briefing rather than rehashing it.

**Rule 23(b)(3)'s predominance** standard "is meant to help courts identify cases in which aggregate treatment would be efficient." 2 Newberg § 4:49. And the predominance inquiry is whether it is "more efficient, in terms both of economy of judicial resources and of the expense of litigation to the parties, to decide some issues on a class basis or all issues in separate trials." *Butler v. Sears*, 702 F.3d 359, 362 (7th Cir. 2012). The answer is clear here.

---

[8] The Merit Board has previously argued that variations in how many times class members took the NCJOSI[2], the SBSA-LEO, or the PAT, or how intensively they prepared for those exams defeats commonality or typicality here. ECF No. 321 at 7. That is wrong: those circumstances bear on none of the elements of a Title VII disparate impact cause of action, 42 U.S.C. § 2000e–2(k), making them irrelevant to whether claims should be certified. And it is inevitable in a Rule 23 class challenging an employment test that some class members will have prepared for the test and others won't have, and often some but not all class members will have taken a test multiple times. If a precondition for class certification were uniformity in class members' pre-test experiences, there would be no class action testing cases.

Both qualitatively and quantitatively the most significant liability issues here are the class-wide questions identified above.[9] The answers to those common questions will "drive the resolution" of every class member's claim, *Wal-Mart*, 564 U.S. at 350, and will not vary from one class member to another, making it far more efficient to adjudicate these questions once than make every class member litigate them individually.

Here, in addition (and this is not true in many other cases), *damages* will also be subject to class-wide, rather than individualized, proof. As the Seventh Circuit and other courts have explained, in challenges to hiring or promotional practices it is often impossible to determine which particular class members would have been hired (or promoted) but for the Title VII violation—particularly when, as here, the number of class members exceeds the number of jobs lost due to the violation and, in addition, some but not all class members might have been eliminated at later steps of the hiring process. For these reasons, instead of an individual-by-individual approach to computing monetary relief, courts instead measure the aggregate (class-wide) loss, based on expert calculations of how many additional Black candidates (the "shortfall" number) would have been hired (or promoted) but for the violation. Then, that sum is apportioned among the class members. *EEOC v. O&G Spring & Wire Forms Specialty Co.*, 38 F.3d 872, 879 & n.9 (7th Cir. 1994) (describing calculation of aggregate or "class-wide [backpay] relief" in hiring discrimination cases); *Stewart v. Gen. Motors Corp.*, 542 F.2d 445, 452 (7th Cir. 1976) (affirming the use of class-wide rather than individualized backpay

---

[9] Those questions are: Did the exam (being challenged by a particular class) have a disparate impact against Black applicants? Was the exam still job related and consistent with business necessity, providing a defense to the disparate impact? And if the exam was job related despite its disparate impact, could the Defendants have reduced or avoided the disparate impact through "lesser discriminatory alternative" means?

8

calculations to avoid the "quagmire of hypothetical judgments" that would inevitably be required to identify which particular individuals, out of a large class, would have been hired).[10]

In previous briefing, Defendants have questioned whether a class of rejected applicants might be over-inclusive on the mistaken theory that anyone who would not ultimately have been hired has not suffered any injury-in-fact. ECF No. 321 at 19-20. That issue is easily dispensed with. As both the Supreme Court and the Seventh Circuit have made very clear, and as this Court recognized earlier in this case, ECF No. 273 at 3-4, all rejected applicants do suffer "injury in fact," flowing from losing the opportunity to continue to compete for a job (the "loss of a chance")—even if they would not ultimately have gotten the job.[11] And in addition, Defendants' misunderstanding also overlooks that in employment cases "it is black letter law that individualized damage calculations do not render common liability issues non-predominant." 7 Newberg § 23:33 (5th ed.); see also *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 379 (7th Cir. 2015) ("The fact that the plaintiffs might require individualized relief or not share all questions

---

[10] For more cases using class-wide backpay calculations, see also *Lewis v. City of Chicago*, No. 98 C 5596 (N.D. Ill., Aug. 17, 2011), ECF No. 470 § C (describing and ordering calculation of aggregate backpay and method for distributing it to class members) (copy attached as Exhibit A hereto); *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 161 n.6 (2d Cir. 2001); *McClain v. Lufkin Indus. Inc.*, 519 F.3d 264, 281 (5th Cir. 2008) ("The accepted way to apportion damages among a class of plaintiffs who outnumber the lost … spots is to compute the total [loss] … and divide the value among the class members"); *Easterling v. Conn. Dept. of Corr.*, 2012 WL 13027455, at *2 (D. Conn. June 27, 2012) (describing class-wide calculation of back pay because "it would be impossible to determine exactly which class members would have received job offers" if pre-employment testing had not violated Title VII); *United States v. City of New York*, 847 F. Supp. 2d 395, 408–09 (stating that a case "may require class-wide, rather than individualized, assessments of monetary relief" where "the facts are not so clear as to allow a determination as to which class members" would have been hired).

[11] See, e.g., *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. Jacksonville*, 508 U.S. 656, 666 (1993) ("the 'injury in fact' … is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit"); *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 280 n.14 (1978) (denial of opportunity to compete for admission to university is injury-in-fact, even if plaintiff would not have been admitted); *Biondo v. City of Chicago*, 382 F.3d 680, 688 (7th Cir. 2004) (commending the "loss of a chance" method as "the best way" to handle probabilistic injuries when applicants outnumber job openings).

9

in common does not preclude certification of a class."); *Chicago Teachers Union, Local No. 1 v. Board of Educ. of City of Chicago*, 797 F.3d 426, 444 (7th Cir. 2015) (holding that individualized damages did not defeat predominance).

**Rule 23(b) superiority.** A class action is by far superior here to any other way of adjudicating the claims. Only a class action will resolve common issues in one suit, avoiding relitigating common claims case-by-case.[12] It will prevent inconsistent outcomes in like cases. And because the economic stakes to some class members might be too slight to repay their cost of suit, only a class action will make it possible for many class members to have their claims adjudicated.[13]

### IV. The PAT is One Employment Practice.

The PAT is a three-part exam, consisting of sit ups, a bench press, and a 1.5 mile run. And the measure of the PAT's disparate impact is the pass/fail rate of Black applicants compared to White applicants on the complete battery—just as the unit of measure for disparate impact for a written test with 20 questions is scoring on the whole test, not on any individual test question.

The cases consistently treat a multi-step PAT as one employment practice.[14] And even if in certain circumstances multi-step PATs could be treated as separate practices, the PAT must be

---

[12] *McReynolds v. Merrill Lynch,* 672 F.3d 482, 491 (7th Cir. 2012) (noting that it makes "good sense" to resolve whether a challenged employment practice violates Title VII in a class-wide proceeding and "in one fell swoop" rather than retrying it over and over in separate trials by individual class members).

[13] *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.") (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)); *Lehocky v. Tidel Techs., Inc.,* 220 F.R.D. 491, 511 (S.D. Tex. 2004) ("individual actions would waste judicial resources and leave most class members without an economically feasible remedy").

[14] See *Ernst v. City of Chicago*, 837 F.3d 788 (7th Cir. 2016) (PAT included "modified stair-climb," "arm-endurance test," and "leg lift" subcomponents; disparate impact was calculated for the PAT as a

treated "as one [employment] practice" unless and until the Merit Board produces complete and reliable data showing why each rejected applicant failed the PAT, which it has not done. See 42 U.S.C. § 2000e-2(k)(1)(B)(i) (providing that a multi-step employment practice that causes a disparate impact and is "not capable of separation for analysis," may be "analyzed as one employment practice"); 42 U.S.C. § 2000e-2(k)(1)(B)(i); see also *Palmer v. Shultz*, 815 F.2d 84, 110 (D.C. Cir. 1987) ("plaintiffs cannot be legitimately faulted for gaps in their statistical analysis when the information necessary to close those gaps was possessed only by defendant[s]" and was not furnished either to plaintiffs or to the court); *Port Auth. Police Asian Jade Soc'y of N.Y. & N.J. Inc. v. Port Auth. of N.Y. & N.J.*, 681 F. Supp. 2d 456, 464 (S.D.N.Y. 2010) (considering multi-step promotional process as a whole, reasoning that "whether a particular step causes a disparate impact" could not be determined when "records do not exist for every step").[15]

## V. Limitations Questions

Mr. Merkerson filed a class-based EEOC charge challenging the Merit Board's hiring process on January 8, 2016. The Title VII claims here therefore cover unlawful hiring practices on or after March 14, 2015 (300 days before the charge, 42 U.S.C. § 2000 e-5(e)(1)). This suit was filed on January 24, 2018. ECF No. 1. The Illinois Civil Rights Act claims therefore cover

---

whole); *Berkman v. City of New York*, 536 F. Supp. 177, 200, 204–05 (E.D.N.Y. 1982), *aff'd* 705 F.2d 584 (2d Cir. 1983) (PAT included a dummy carry, hand grip, broad jump, flexed harm hang, agility test, ledge walk, and a one-mile run; disparate impact was calculated for the PAT as a whole); *Arndt v. City of Colorado Springs*, 263 F. Supp. 3d 1071 (D. Colo. 2017) (four-part PAT, with disparate impact calculated on the whole); *Thomas v. City of Evanston*, 610 F. Supp. 422 (N.D. Ill. 1985) (PAT included a stair-climb, ¼ mile run, and obstacle course; disparate impact calculated for the PAT as a whole); see also *Allen v. Seidman*, 881 F.2d 375, 381 (7th Cir. 1989) ("[N]othing in the structure of a disparate-impact case requires such pinpointing").

[15] Defendants informed Plaintiffs' counsel the day before this supplemental brief was due that it had finally discovered score sheets for persons who failed the PAT, but they have not been produced, and Plaintiffs cannot know whether they will permit reliable, separate analyses of each of the three PAT events, even if such an analysis were necessary (which would mean that all the decisions treating PATs as a single practice were decided incorrectly).

unlawful hiring practices on or after January 24, 2016 (two years before suit, 740 ILCS 23/5(b)). That bring us to the question of *what* the covered unlawful hiring practice is.

In earlier briefing, the Defendants have wrongly contended that for Title VII claims the only unlawful employment practice is a class member's disqualification (rejection in the hiring process), which class members became aware of on the date they were notified of that rejection. The City of Chicago tried that same argument, unsuccessfully, in *Lewis v. City of Chicago*, 560 U.S. 205, 213-14 (2010) ("The only actionable discrimination, [the City] argues, occurred … when it … notified petitioners" of their exam results). And the Supreme Court unanimously rejected it, 9 to 0 (a rarity in civil rights cases). Nobody on the Supreme Court thought it was a close question.

The Supreme Court's unanimous ruling is binding here. The Supreme Court held, in *Lewis,* that in a Title VII disparate impact hiring case (like *Lewis* and like this case), the injury suffered by class members is their exclusion from a *round of hiring,* and *not* their receipt of a rejection letter, and that injury *recurs* every time the employer makes hiring decisions from a pool of applicants who took a challenged exam.

The Supreme Court explained that this outcome is required by Title VII's *statutory language,* which explicitly provides that an employer commits a new disparate impact violation each time it "*uses* a particular employment practice that causes a disparate impact." 42 U.S.C. § 2000e-2(k)(1)(A)(i) (emphasis added). The Supreme Court held that an employer "uses" exam scores to make a hiring decision *in every round of hires*, each time committing a new violation. Hence, for a disparate impact claim—*unlike* a disparate treatment claim where the rule is *different*—the conduct, or "trigger," that starts the limitations period running is the *hiring round*. It is the employer's *use* of exam scores when it *hires* candidates that triggers the statute of

12

limitations, *not* a plaintiff's receipt of notice of his or her disqualification during the selection process. *Lewis*, 560 U.S. at 210-15.

These distinctions between the disparate treatment and disparate impact limitations periods are critical in the context of class certification in this case, where the Seventh Circuit has emphasized that standards for disparate treatment claims must not be applied to the disparate impact claims. Opinion at 10, *Simpson v. Dart*, No. 21-8028 (7th Cir. Jan. 6, 2022), ECF No. 354 (noting that disparate impact and disparate treatment "root themselves in different provisions of Title VII" and warning against confusion between them).

The Supreme Court's controlling decision in *Lewis* mainly means two things for class certification in this case. First, for Title VII disparate impact claims, the unlawful employment practices at issue here occurred on the dates of the *hiring rounds* (all rounds are timely after March 14, 2015 (300 days before the first EEOC charge)). Second, class membership should be defined to cover Black applicants who took the first written test at a time that put them into consideration for a *hiring round* that occurred after March 14, 2015. The first point is legal: the unanimous ruling in *Lewis* requires it. The second point is empirical. It is empirical in that the hiring data tell us who, based on their date of testing, would necessarily have been considered for hiring rounds after March 14, 2015: namely, Black applicants who took the first written test during or after *July 2014* were eliminated from consideration for hiring rounds *after* March 2015. That is because the Defendants' entire hiring process takes months, or even years. It is an empirical fact that Black applicants who sat for the first written test in July 2014 could not have been included in hiring rounds until after March 2015 (inside the limitations period). See Scherbaum Declaration (Exhibit B to this brief). Plaintiffs have therefore defined their classes

13

using the July 2014 written testing date, because it corresponds to *hiring rounds* after March 14, 2015.

## CONCLUSION

For the reasons stated above, and in Plaintiffs' earlier briefing (ECF Nos. 198 and 235), the Court should certify four classes under Fed. R. Civ. Proc. 23(b)(3).

Class 1: All Black applicants for Correctional Officer positions at the Cook County Jail who took and did not pass the NCJOSI$^2$ (the first written test) during or after July 2014 and before April 2016.

Class 2: All Black applicants for Correctional Officer positions at the Cook County Jail who took and did not pass the NCJOSI$^2$ (the first written test) during or after April 2016.

Class 3: All Black applicants for Correctional Officer positions at the Cook County Jail who took and passed the NCJOSI$^2$ (the first written test) during or after July 2014 and then took but did not pass the SBSA-LEO (the second written test).

Class 4: All Black applicants for Correctional Officer positions at the Cook County Jail who took and passed the NCJOSI$^2$ (the first written test) during or after July 2014 and then took but did not pass the physical abilities test (PAT).

Each of these four classes should be certified to litigate at least the following common and predominating questions: (1) whether the exam challenged by that class had an adverse impact on Black applicants; (2) whether, despite the exam's adverse impact, its use was job related and consistent with business necessity; (3) if the exam's use was job related and consistent with business necessity, whether the Defendants had lesser discriminatory alternatives with substantially equal or greater validity; (4) what is the quantum of class-wide monetary relief to which the class is entitled and how should it be allocated; and (5) what class-wide declaratory and injunctive relief should the class be awarded.

14

      A draft proposed order is Exhibit C to this brief.

Dated: January 28, 2022

                                        Respectfully submitted,

                                        /s/ Margaret E. Truesdale
                                        *One of the attorneys for Plaintiffs*

| | |
|---|---|
| Marni Willenson | Matthew J. Piers |
| marni@willensonlaw.com | mpiers@hsplegal.com |
| WILLENSON LAW, LLC | Caryn C. Lederer |
| 3420 W. Armitage Ave., Ste. 200 | clederer@hsplegal.com |
| Chicago, IL 60647 | Margaret E. Truesdale |
| P:312.508.5380 | mtruesdale@hsplegal.com |
| F:312.508.5382 | Justin Tresnowski |
| | jtresnowski@hsplegal.com |
| Cyrus Mehri | HUGHES SOCOL PIERS RESNICK & DYM, LTD. |
| CMehri@findjustice.com | 70 W. Madison Street, Suite 4000 |
| Ellen Eardley | Chicago, IL 60602 |
| EEardley@findjustice.com | 312.580.0100 |
| Michael Lieder | |
| MLieder@findjustice.com | |
| Joshua Karsh | |
| JKarsh@findjustice.com | |
| MEHRI & SKALET, PLLC | |
| 2000 K Street, NW, Ste. 325 | |
| Washington, D.C. 20006 | |
| 202.822.5100 | |

15

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 28, 2022, I caused a copy of the foregoing document to be served via the electronic case file system upon counsel of record for all parties.

/s/ Margaret E. Truesdale
One of the attorneys for Plaintiffs