IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION

| | |
|---|---|
| JOSEPH SIMPSON, *et al.*, ) | |
| ) | 18-cv-00553 |
| Plaintiff, ) | |
| ) | Hon. Sharon Johnson Coleman |
| vs. ) | |
| ) | |
| COOK COUNTY SHERIFF'S OFFICE, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' JOINT RESPONSE TO PLAINTIFFS'
SUPPLEMENTAL BRIEF IN LIGHT OF THE SEVENTH CIRCUIT'S
DECISION ON CLASS CERTIFICATION**

Defendants, Cook County Sheriff's Office (the "Sheriff") and Cook County, by their attorneys, Tom Luetkemeyer and Brette Bensinger, and Defendant Cook County Sheriff's Merit Board ("Merit Board"), by its attorney, Kimberly M. Foxx, Cook County State's Attorney, through her Assistant State's Attorney, Lyle K. Henretty, submit the following Response to Plaintiffs' Supplemental Brief in Light of the Seventh Circuit Decision on Class Certification.

Dated: April 18, 2022

Respectfully submitted,

KIMBERLY M. FOXX
State's Attorney of Cook County

/s/*Tom H. Luetkeymeyer*
Tom H. Luetkemeyer
Robert Shannon
V. Brette Bensinger
Hinshaw & Culberton LLP
151 N. Franklin Street #2500
Chicago, Illinois 60606
(312) 704-3056

*Counsel for Cook County and
The Cook County Sheriff's Office*

/s/ *Lyle K. Henretty*
Lyle K. Henretty
Cook County State's Attorney's Office
Conflicts Counsel Unit
50 W. Washington St., Suite 2760
Chicago, Illinois 60602
(312) 603-1424
lyle.henretty@cookcountyil.gov

*Counsel for Defendant Cook County
Sheriff's Merit Board*

1

I.     **Introduction**

Plaintiffs' efforts to certify multiple, ever-changing classes and subclasses has a history well known to this Court. The Seventh Circuit weighed in on Plaintiffs' latest gambit and remanded to this Court for consideration of the certification of four specific and separate classes, each based on a distinct test administered during the Merit Board certification process. The tests at issue consist of the initial written test in effect until 2016; the initial written test in effect after 2016; the second written test, referred to as the "situational test"; and the physical agility test (the "PAT").

The Seventh Circuit's decision was narrowly focused and did not address many of Defendants' compelling arguments prior to the appeal in Defendants' underlying Response and Sur-Reply. (*See* Dkt. 211, 214 & 322). Most of these arguments also were not touched by the Plaintiffs in their brief on remand. Careful consideration of those arguments shows this Court got it right the first time, and Plaintiffs' supplemental motion fails on multiple grounds, any one of which is sufficient to refuse the certification of the proposed remaining four classes.

The flaws in Plaintiffs' position are many. There are scope of charge and adequacy of class representative issues as certain Plaintiffs attempt to "piggy back" on charges by complainants who passed and did not challenge the exams. The proposed class definitions fail in what is now Plaintiffs' sixth attempt. Plaintiffs fail to frame the correct common question on the written exams, and fail to address or raise a question concerning the validity evidence in the record. There simply is no commonality or typicality among even the named Plaintiffs taking the exams, much less the class members. Plaintiffs finally cannot satisfy Rule 23's predominance and superiority requirements. Each topic will be addressed in this brief.

II.     **Scope of Charge and Adequacy Issues for the Named Plaintiffs.**

This Court should dismiss each of the four classes based on the fact that they are clearly outside the scope of any underlying charge. Each named Plaintiff who filed a charge before the EEOC passed the exams and did not challenge them before that agency; therefore, there was no

2

exhaustion on the exam issues. The scope of the charge issues will be addressed at the summary judgment stage, but those issues have clear implications for class certification as well.

The Third Amended Complaint identifies five class representatives for the four remaining proposed classes. (Dkt. 363, ¶120). None of the proposed class representatives filed charges with the EEOC. While that is not necessarily fatal to the proposed classes or their representatives, what is fatal to all putative class claims and the adequacy of the representatives is that none of the Plaintiffs who filed charges in this matter challenged the written exams or the PAT in any way. There is only passing reference to the written exams and the PAT in the charges, and then only to reference that each charging party *passed* the exams in question. (EEOC Charges, Group Exh. A).

The five individuals identified in the Third Amended Complaint as class representatives on the exam did not file charges. None of the named representatives can piggy back on the filed charges, because not one of the charges underlying this action identifies a written exam or the PAT as the reason a charging party was disqualified from the process. Only three EEOC Charges were filed in this case (by Plaintiffs Harris, Merkerson and Richardson), and all three passed the exams and were disqualified at later stages of the hiring process.

To conclude that none of the four exams should be part of this litigation, the Court need look no further than Judge John Tharp's decision in *Vasich v. The City of Chicago*, 2013 U.S. Dist. LEXIS 1740, 2013 WL 80372 (2013). That case provides an on-point discussion of the precise issues involved here, and concerned a PAT administered to firefighter/EMT candidates. The allegation was that its scoring created a disparate impact against female applicants in violation of Title VII. In *Vasich*, the initial charges did not identify concerns about the PAT, and the court found that the plaintiffs did not meet the exhaustion requirements of Title VII. Further, the court noted a general concerns about sex discrimination or with hiring were inadequate to give sufficient notice that class claims implicated the PAT.

The facts of this case are even worse for the Plaintiffs than the plaintiffs in *Vasich*. There, unlike here, a later charge referenced the PAT as being potentially problematic. Noteworthy here

3

is *Vasich's* finding that the earlier charges, which did not complain about the PAT, were insufficient to put the defendant on notice that the PAT was even at issue, much less for class purposes. At least the plaintiffs in *Vasich* eventually filed a charge about the PAT, and from that point proceeded with a corresponding shortened class period. There is no charge of discrimination raising the written exams or the PAT as an issue, much less identifying a charging party who failed an exam.

## II.     Plaintiffs' Class Definitions Once Again Fail.

After five, always-changing attempts at articulating class definitions, Plaintiffs fare no better on their sixth try. In their most recent version, they attempt to extend the class period for Title VII claims well beyond the bounds of the law, with a starting point nearly two years before the first EEOC Charge was filed (roughly 540 days), instead of the 300 days permitted by Title VII. To get there, the Plaintiffs misstate the law and misapply the basic premise of *Lewis v. City of Chicago*, 560 U.S. 205 (2010), the only case they cite in support of their theory, and the case they assert "is binding here." That case is inapposite and does not support Plaintiffs' argument.

Plaintiffs provide no basis to extend the class period beyond 300 days of the filing of their initial charge. Despite settled law, three out of the four class periods begin in July 2014, instead of March 14, 2015, which is 300 days prior to the filing of the initial charge. (Compare Plaintiffs' Motion, Dkt. 359, hereinafter "Mtn." at 11, with proposed class periods at p. 14). In attempt to extend the time of their "actual injury," Plaintiffs create an elaborate and legally unsound process, which only adds confusion and provides further grounds to reject class certification.

In their Motion, Plaintiffs ignore the verifiable date each putative class member received notice of a failed test and disqualification from hire, and insist the injury in this case is their rejection from purported "hiring rounds" – which occurred months or years after they were disqualified from hire. (Dkt. 359, Mtn, p. 13).

To put Plaintiffs' arguments in context, the only remaining class claims are based on four discrete tests and the purported disparities in passing rates between Black and White applicants. Third Am. Compl., Dkt. 363 ¶128; Mtn. at pp. 2-3. Failing a test is a discrete, discernable event,

4

and Plaintiffs' alternative "rounds of hiring" injury has no connection to the dates of disqualification based on a failed test. It also conflicts with the injury identified in the foundational documents forming the basis of Plaintiffs' lawsuit. Based on the record Plaintiffs made, this Court should not certify any of the four proposed classes because the alleged unlawful employment practice and the class periods are improper as a matter of federal law.

### A. Plaintiffs' Pleadings Do Not Support their Class Definitions

"[D]etermining whether a plaintiff's [EEOC] charge is timely thus requires 'identify[ing] precisely the 'unlawful employment practice' of which he complains.'" (citation omitted). *Lewis*, 560 US at 210. The initial section of Plaintiffs' Motion, the EEOC Charges and the Disparate Impact Count of the Third Amended Complaint all describe the unlawful employment practice as the rejection of the applicant based on a failing test score – without any reference to a "round of hiring." Mtn. at pp. 2-3; Exh. A, EEOC Charges; TAC ¶128.[1] *Id*. Even their proposed class definitions rely on their failure to pass a particular test as the injury. Mtn. at 14. In direct conflict, the Limitations section of Plaintiffs' Motion insists the unlawful employment practice is the "exclusion from a round of hiring, and not their receipt of a rejection letter." Mtn. at 12. Instead of the precision required by *Lewis* as cited directly above, they identify conflicting "unlawful employment practices," and certification should be rejected on this basis.

### B. *Lewis* Does Not Otherwise Support Plaintiffs' Argument

*Lewis* does not support Plaintiffs' argument. First, *Lewis* did not address whether the injury occurred at "hiring rounds" or upon the plaintiffs' notice of disqualification. 560 U.S. 205. To summarize, all of the plaintiffs in *Lewis* passed the test, and the defendant City used the scores of all passing candidates to classify them into "qualified" and "well qualified" categories. 560 U.S. at 207. The plaintiffs in *Lewis* assigned to the former category remained eligible to advance (and some did advance) within the hiring process once the group of "well qualified" applicants had been

---

[1] Specifically, Count VII of Plaintiffs' Third Amended Complaint states, "in rejecting the employment applications of named Plaintiffs … [they] used selection procedures that have a disparate impact on the basis of race." *Id*.

exhausted. 560 U.S. at 209. Each time those eligible for hire in *Lewis* were passed over, an injury accrued, yet they remained on the list for the next selection round. 560 U.S. at 214.

Unlike the plaintiffs in *Lewis*, Plaintiffs here had no ongoing hiring opportunities. Once they failed the exam and were disqualified, they were no longer eligible to continue in the hiring process. Independent of the fact Plaintiffs in *Simpson* were disqualified - and the plaintiffs in *Lewis* were still in contention - Plaintiffs further mischaracterize *Lewis* by misstating the injury. According to Plaintiffs, *Lewis* held that the unlawful employment practice in all disparate impact "failure to hire" cases occur at the point of hiring. Mtn. at 12. The injury in *Lewis* did not occur at the point of hiring. 560 U.S. at 208, 209, 211. The Court described the unlawful employment practice in detail, explaining that petitioners complained about: "the exclusion of passing applicants…when selecting those who would advance." 560 U.S. at 212. The Court also explained an applicant's remaining steps in the hiring process once selected for advancement, including the requirement that they pass a physical ability test, a background examination, then a medical examination, among other steps. 560 U.S. at 298. Only if they passed the aforementioned tests would they be hired.[2] *Id.*

Notably, when referring to the "first round" and whether it occurred in the charging period, the Court explained, in detail, that the "first round" referred to the selection of applicants for advancement (not hiring).[3] 560 U.S. at 211. Additionally, this distinction was not critical to the Court because it was not an issue in the case. In *Lewis*, the parties agreed on the trigger date and the underlying injury at issue. 560 U.S. 212. Instead, the question for the Court was whether the action of being "excluded" could state an injury in the first place. *Id.*

### C. Plaintiffs' Disparate Impact Claim is Not Based on the Overall Hiring Process

Independent of Plaintiffs' mischaracterizations, they no longer seek to certify a claim that

---

[2] To give Plaintiffs the benefit of the doubt, their faulty argument may have arisen from a one-off reference at the end of *Lewis*, when the Court referred to the process as "hiring round." That proves as no excuse because the injury was clearly identified and explained by the Court, along with the remaining steps in the hiring process after "selection."
[3] "Petitioners here challenge the City's practice of picking only those who had scored 89 or above … [for] applicants to advance. Setting aside the first round of selection … which all agree is beyond the cutoff, no one disputes that the conduct petitioners challenge occurred within the charging period." *Lewis*, 560 U.S. at 211.

the overall, combined hiring practices of the Sheriff and the Merit Board created a disparate impact in hiring. In other words, they cannot prove their claim by using statistics of applicants ultimately hired. That attempt has already been abandoned. Instead, the disparate impact claim is based on the differentials in passing rates between Black and White applicants with respect to a particular test. Mtn. at 2-3. As a result, any reference to a hiring round is misleading.

### D. Plaintiffs' Reference to Disparate Treatment Claims Should be Disregarded

Plaintiffs have no reason to raise their previously dismissed disparate treatment class claims. Yet, they continue to raise the issue with questionable use of italics ("*unlike* a disparate treatment claim where the rule is *different*") and include a "warning" to the Court against confusion between them. Mtn. at 12-13. They attempt to use this distinction to support their relentless and erroneous contention that "…for a disparate impact claim…the conduct, or 'trigger,' that starts the limitations period running is the *hiring round*." Mtn. at 12. (emphasis in original). As explained in *Delaware State College v. Ricks,* 449 U.S. 250, 259 (1980)*,* cited by *Lewis* when addressing this issue, the unlawful practice occurs when a plaintiff knew or should have known that he or she had been discriminated against. *Id.* (finding that the limitations period commenced when the tenure decision was made and Ricks was notified, not when the position actually terminated). Based on *Ricks*, the injury here accrues upon notification of a failed the test and disqualification from hiring.

### E. Specifics of Plaintiffs' Class Definition Underscore the Weakness of their Position

Additional deficiencies in their class definitions include their attempt to tie the purported (and inappropriate) statute of limitations from the first examination to their three other proposed class definitions. Mtn. at 14. As made clear by the *Ricks* (and cited by *Lewis*), the trigger for the statute of limitations is the date the recipient is notified of the alleged unlawful conduct. *Ricks,* 449 U.S. at 259. There is no reason to include the initial written test in all other proposed class definitions that address completely separate tests. Plaintiffs claim each test creates a disparate impact on its own; that is why the proposed classes are separated. Including the initial written test in the subsequent three class definitions only serves to confuse the definitions and make it

7

impossible to identify who is in the class and who is out.

Additionally, the proposed class definitions use the point at which the applicants "took but did not pass" the particular test as the start of the class period. Mtn. at 14. As evident from *Ricks*, *supra*, the trigger for the statute of limitations occurs on the date the plaintiff is notified of disqualification, which (except for the PAT) is not commensurate with the date the applicant took the test. Furthermore, the class timeframe identified in the proposed class definitions is wrong because it starts in July 2014, approximately 18 months prior to the earliest EEOC Charge filed in this case. In deferral states (like Illinois), a charge is "due within 300 days after the alleged unlawful employment practice occurred." *Lewis*, 560 U.S. at 211. Eschewing this legal requirement, Plaintiffs insist they need approximately 540 days. The law does not allow it. Despite five prior chances – which provided ample opportunities to get it right -- their class definitions fail once again.

### III. Plaintiffs' Failure to Challenge Defendants' Validity Evidence Prevents Certification.

A fair reading of the Seventh Circuit's opinion suggests that a statistical disparity alone raises an appropriate question for class certification in a disparate impact case. *See* 7th Circuit Op., Dkt. 354. That may certainly be true in some cases, but not in this case. Based on the development of the record when the decision was made by this Court on class certification, the correct question for commonality purposes is whether this record was sufficient to create a legitimate question for class certification purposes when the record contains validity evidence supporting the exams. As Plaintiffs did nothing over the life of this case to raise even a question about the validity evidence, this Court was correct in denying class certification for the two written exams in its Opinion.

The Seventh Circuit never precisely addressed this legal point or the arguments made by Defendants when it remanded the case for further consideration of class certification. Plaintiffs should have raised at least an arguable challenge to the validity evidence in the record. Consistent with its obligations under *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147 (1982), this Court recognized the validity evidence, and properly held that the issue has evolved beyond a simple mathematical disparity to the common question whether there was an arguable issue on the validity

evidence itself. As Defendants' arguments were not addressed in the Seventh Circuit, now is the time to confirm this Court's rationale and deny class certification on the two written exams. The appropriate common question for class purposes when a validated exam results in a pass rate disparity based on a protected classification is whether the test was validated properly.

The Seventh Circuit's general conclusion regarding the proper question is absolutely correct in the absence of validity evidence, or when a legitimate question concerning that validity evidence is raised. In those situations, a statistically significant disparity based on race usually would be enough to justify the certification of a class. However, the Seventh Circuit did not address whether a plaintiff could certify a class in the face of known validity evidence with only a showing of a simple statistical disparity. Indeed, there is no case law on this point because plaintiffs alleging disparate impact discrimination based on a written exam rarely ignore validity evidence in the record. Here, Plaintiffs entirely ignored the validity evidence in the record and that omission should be fatal to their class certification motion.

So there is no confusion, the Plaintiffs here are not required to prove their challenge to validity evidence at the class certification stage, but they at least must show under *Falcon* there is a basis for a challenge. Under the Plaintiffs' theory, a test could be fully validated, but a statistical disparity based on a protected classification would justify certification of a class. This would trigger the long, laborious, expensive process of class action litigation. That should not or could not be the rule in the face of validity evidence.

The Court decided this issue correctly the first time. There is no disagreement with the conclusion of the Seventh Circuit that the appropriate question is *why was I disfavored*. (7th Cir. Op., Dkt. 354, p. 12). When validity evidence exists, the proper question is not solely whether a statistical disparity exists, but whether an improperly validated exam caused it. In that circumstance, they must do something to establish a legitimate question on whether the written exam was properly validated, otherwise *Falcon's* requirement of a rigorous analysis has little meaning. This is precisely where the merits overlap in the liability and class certification stages.

9

The Plaintiffs' failure to raise even a factual or legal challenge to the validity evidence requires denial of their Motion for Class Certification on the written exams.

IV. **Plaintiffs Proposed Classes 1 and 2, based on the First Written Test and 3, based on the Situation Test (Second Written Test) Still Fail on Commonality and Typicality.**

The proposed written exams classes fail to meet the commonality and typicality requirements of 23(a)(2). First, for the Plaintiffs to meet the commonality requirement, they must establish "the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.'" *Wal-Mart*, 564 U.S. at 350 (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 131-32 (2009)) (emphasis in original). While the Seventh Circuit discussed some of the common questions *generally* present in a discrete employment action, such as the Merit Board tests, it made no finding that the proposed classes would generate common *answers*.[4] Since the manner with which putative class members approach each test varies significantly, a class action would not drive the resolution of this litigation.

There are extensive variances among how even the named Plaintiffs themselves took the first written test. Putative class representative Simpson applied to be a Correctional Officer four separate times. (Dkt. 365, ¶ 29). Simpson took the test four times and passed on the third attempt. (*Id.*, ¶¶ 29-31). Subsequently, the MB certified him. (*Id.*, ¶ 29). The Sheriff did not hire Simpson, and he applied for a fourth time, and again failed the written exam. (*Id.*, ¶ 31). Simpson "prepared" for the test by reviewing a "one-to-four-page study guide," but did not review the more comprehensive study guide that was freely available to him. (Dkt. 321-1, pp. 261:19-23; 264:22-265:9; Dkt. 321-2, pp. 37:11-38:1). Putative class representative Dunner took the test and passed

---

[4] In its remand, the Seventh Circuit, relying on *McReynolds*, indicated that the tests were "discrete employment polic[ies]," and that such discrete policies are "well-suited for classwide adjudication," but declined to certify the classes, explicitly ordering that whether or not the exam subclasses will ultimately merit certification is first a question for this court. (Dkt 354. p. 12). The appellate court did not address most of the arguments set forth in this brief with respect to class certification.

on the first try but was not later certified by the MB. (Dkt. 365, ¶¶ 66-69). Despite passing the first time, Dunner failed the test on his second two attempts. (*Id.*, ¶ 73). He does not remember whether he even prepared prior to taking the test. (Dkt. 321-3, p. 37:4-8). Johnson studied extensively using the 100-page test booklet and passed on his first try in 2018. (Dkt. 321-3, p. 36:15-20). Johnson was disqualified at a later stage and reapplied. He took the *exact same test* in 2019 and failed it. (Dkt. 365, ¶¶ 63-64). Newly-named Plaintiff Tiffany Harrison took the *exact same* test on two separate occasions, failing it both times. (Dkt. 365, ¶ 80). She did not recall studying at all, either time she took the test. (Harrison Dep., Exh. B, pp. 29:6-21; 38:10-16).

Plaintiffs attempt to combine individuals who took a test multiple times, sometimes passing one test and not the others, some who studied and some who did not, some who availed themselves of the study guide and others who cannot recall if they did, and also includes individuals who passed, were disqualified at another step and then later failed the exam when they started the process anew. The lack of commonality among the putative representatives only would be exacerbated by the inclusion of additional class members. An applicant passing the test after multiple tries (and thus knew some or all of the questions before they were successful) is at odds with an applicant who passed the test the first time (without foreknowledge of the questions) but failed the exact same test at a later date.

Plaintiffs cannot establish typicality for the three written exams for similar reasons. The varied reasons an applicant can fail one of the two written tests do not arise from the "same practice or course of conduct." Certainly, the tests themselves are proctored in a uniform way, but they are available to be taken multiple times by each applicant. An applicant who knows most or all of the questions prior to taking a test for the third or fourth time is not typical of an applicant who has never taken it and has not reviewed the comprehensive study guide. There is no typicality between the putative class representatives, let alone the putative classes at large.

Plaintiffs attempt to dismiss these arguments in a footnote (Dkt. 359, p. 7, n. 8), merely stating, without legal support, that they are "irrelevant" and have no bearing on their disparate

11

impact claims. They further state, without citation to law or fact, that it is "inevitable" that a class challenging an employment test will have such variances in the number of times each class member took the test and whether they studied. This argument is based on (and supported by) nothing. They fail to produce evidence regarding whether it is typical of an employer to provide a comprehensive study guide for an employment test, or whether an average employer permits (as here) an applicant to take the same test *as many times as they want* without repercussion. Plaintiff cannot meet its burden on commonality and typicality by merely stating, as they do here, that any fact that does not fit their schema is "inevitable" and thus should be ignored by the court.

The remainder of Plaintiffs' commonality and typicality arguments are equally unavailing. Their entire argument is based on a misquote from *Wal-Mart*. (Dkt. 235, pp. 1, 5). *Wal-Mart* does not find, as Plaintiffs argue, that commonality and typicality are "clearly" satisfied because some of the Plaintiffs seek to challenge tests used to evaluate applicants. (*Id.*, pp. 5-6). The Supreme Court in *Wal-Mart* actually states that "if the employer 'used a biased testing *procedure*'" to evaluate applicants, it would satisfy commonality and typicality requirements of Rule 23(a)." 564 U.S. at 377 *quoting Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147 (1982)(emphasis added).[5] In the instant case, Plaintiffs do not attack the testing *procedure*, but the test itself. Given that each of the Plaintiffs took a different path to passing the written tests, individual inquiries will be necessary for each putative class member. Since there can be no "common answers" without individual inquiry, Plaintiffs fail to establish the commonality and typicality prerequisites to Rule 23(a)(2).

**V.    Plaintiffs' Combined PAT Class Fails the Basic Requirements for Certification**

Plaintiffs' combined PAT class fails for three reasons. The first is their failure to address in any way the deficiency identified by the Court in its September, 2021 Opinion. The second deals with the fact that not a single charge filed with the EEOC by any Plaintiff in this matter identifies the PAT as an issue. No Plaintiff who filed a charge failed the PAT. Finally, even considering the

---

[5] Tellingly, neither *Wal-Mart* nor *Falcon* involved standardized testing. These comments from the Court were effectively *dicta*. As such, Plaintiffs' dismissive argument that *Wal-Mart* is factually on all fours with this case is unsupportable.

12

proposed PAT class in its current form, the numbers fail the "four-fifths rule," which the EEOC recognizes as an evidentiary threshold for disparate impact claims. 29 C.F.R. 1607.4(D).

This Court rejected Plaintiffs' proposed PAT class due to their reliance on a bottom-line statistic, instead of isolating the individual test components (sit ups, bench press and run) causing the disparity in passing rates. As recognized by this Court in its September, 2021 Opinion, "[a]lso, it is plaintiffs' burden to isolate and identify the specific employment practices that are responsible for any statistical disparities, which plaintiffs have failed to do." Opinion, Dkt. 332 at 12, *citing Watson v. Fort Worth Bank & Trust*, 487 U.S. 997, 994 (1988). After this Court's September, 2021 Opinion, Plaintiffs did not file a motion to reconsider and their appeal did not challenge the aforementioned basis for this Court's rejection of the PAT class. They now attempt a second (really sixth) proverbial "bite at the apple" – without having made any attempt to cure the deficiency highlighted in the Opinion. This Court's holding was correct before, and as described below, is even stronger now.

As referenced above, Plaintiffs' failure to isolate the particular employment practice in the PAT renders the proposed class incapable of certification. Pursuant to the Title VII statutory language for disparate impact claims, only when a plaintiff demonstrates that employment practices "are not capable of separation for analysis" may they be "analyzed as one employment practice." 42 U.S.C. § 2000e-2(k)(1)(B)(i).

The PAT here is comprised of three component tests, each of which test an applicant's physical agility in a particular area, consistent with job requirements. Each test is scored on an individual pass or fail basis, with a circle around P or F next to each component test on the applicant's score sheet. Failing any component disqualifies an applicant from hire.

The cases cited by Plaintiffs that allow the use of a bottom-line statistic are inapposite. Instead of scoring each component test on an individual pass or fail basis, the cases cited by Plaintiffs assign points based on an applicant's achievement level on each test and then aggregate the scores, sometimes giving more weight of importance to a particular component, for one

13

overall PAT score per applicant. In short, the scoring process in the cases cited by Plaintiffs are "not capable of separation for analysis," so they fit within the statutory exception and could be analyzed "as one employment practice."

The record shows that Plaintiffs have had the opportunity to review the pertinent records and conduct the required individualized analysis since 2019. Indeed, in their initial interrogatories, Plaintiffs requested the reason for an applicant's disqualification on or following the physical abilities test. (See MB's Interrogatory Response to ¶5, Exh. C). Given that the documentation on the PAT was contained in thousands of pages of records, the Merit Board answered that an accurate response would require "reviewing the paper file associated with each individual" but that "…the Merit Board will agree to make the paper copies in its possession available to Plaintiffs' counsel."[6] *Id.* Plaintiffs never took the next step to review the PAT documentation or obtain the score sheets, despite the memorialized availability.

Plaintiffs continued to ignore the PAT documents even after this Court's September, 2021 Opinion stated that such an analysis was required for class certification. Only after the Seventh Circuit issued its decision did Plaintiffs follow-up on this request for documentation on the PAT.

Furthermore, even the current aggregate rates from the PAT do not satisfy the basic requirements in a disparate impact claim. Based on the statistics set forth by their own expert, the rates do not violate the 4/5 Rule. As such, pursuant to EEOC Regulations, the statistics are not considered evidence of a disparate impact. 29 CFR 1607.4 (D). Ultimately, Plaintiffs proposed PAT class simply cannot be certified based on Plaintiffs' combined PAT theory.

### VII. Even if Petitioners could demonstrate commonality, they could not demonstrate superiority and predominance under Rule 23(b)(3)

The four tests challenged by Plaintiffs occur at the start of the comprehensive and rigorous fourteen step hiring process. As such, it would be nearly impossible to predict which of these applicants would have passed the numerous remaining examinations required for hire. Any such

---

[6] As part of its response, in addition to the paper documents, the Merit Board explained that to provide an accurate response, it would have to review individual information from databases that had already been disclosed/produced.

14

attempt to predict eligibility would necessarily require the individualized analysis of each applicant, inconsistent with Rule 23(b)(3). (Fed. R. Civ. P. 23(b)(3), requiring "that the questions of law or fact common to class members predominate over any question affecting only individual members.") Moreover, the supposed common question on the written exams and the PAT does not predominate over all of the other reasons which may disqualify an applicant later in the process. Rather than streamline the litigation, class certification on those early, threshold issues will only guarantee a long, arduous, and unworkable process of individual inquiry.

By exclusively proceeding under Rule 23(b)(3), Plaintiffs eschew the type of injunctive relief more appropriately sought under Rule 23(b)(2) for disparate impact challenges to written exams. Instead, it is clear their interest is monetary damages on behalf of hundreds of applicants who failed these preliminary tests. Plaintiffs' class definitions make no effort to distinguish between putative class members who failed one of these tests yet remain otherwise eligible for hiring (that is, would meet the remaining rigorous qualifications for employment at the CCSO), and those who would not. All of the steps of the hiring process are staged, meaning that all applicants proceed through the hiring steps in a particular sequence, and only advance to the next step upon successful completion of the prior step. As a result, if an applicant fails any test at any point in the fourteen-step process, the applicant is disqualified.

The hiring process includes a thorough personal history evaluation as well as an investigative interview of each applicant, which occur after the four preliminary tests challenged by Plaintiffs. At the seventh step of the process (also called the certification step), members of the statutorily created Merit Board individually assess each remaining applicant using subjective discretion and independent judgment. A majority of Board members must vote in favor of certification in order for the applicant to advance to the next step. Assuming certification, the applicant then is considered by the Sheriff.

For context, when the applicant participates in the first of the four tests challenged here, the applicant has not been vetted for the position in any way, except for a computerized review of

15

the application. To underscore the preliminary nature of these three challenged tests, they are administered before a background check of the applicant is conducted. As a practical matter, Plaintiffs' proposed subclasses would encompass applicants who failed the initial written test and *never* would have passed the background check due to a serious criminal history. To properly vet the class, Defendants would need discovery on every class member. This discovery would include laborious background checks.

Plaintiffs respond to this concern by seemingly ignoring it, content to assume each putative subclass member who failed one of the three preliminary tests would have successfully satisfied the numerous remaining stages and scrutiny.[7] The Court should not ignore this reality as it would force the Court to conduct mini-trials to determine whether each putative member could or should be included in each class. This is anathema to the very notion of predominance. Given the multi-step hiring process, individual, non-common issues of eligibility always will predominate and will have to be answered. Those individual inquiries blend questions of liability and remedy and will predominate over general questions.

In addition to predominance, Plaintiff could never establish the superiority requirement under Rule 23(b)(3) for the purported subclasses. Given the individualized analysis required to determine eligibility, these four subclasses will not streamline the process. Predicting the eligibility of an applicant who failed at the initial testing stage would be difficult enough on an individual claim, but certainly would be unmanageable if required on a class-wide basis.

**WHEREFORE**, For the reasons set forth herein and in the underlying Response to Plaintiffs' Motion for Class Certification and Sur-Reply (Dkt. 211, 214 & 322), the Defendants respectfully request this Court deny Plaintiffs' motion to certify the classes, and for any additional relief this court deems just and proper.

---

[7] Plaintiffs argue that class damages are subject to classwide proof, essentially offering expert testimony as to the "shortfall" of Black candidates and the lost wages of Black candidates who would have been hired but for the "shortfall." Plaintiffs propose then supporting that amount to the class members. (Dkt. 359, p. 8). However, this assumes that everyone who failed one of the three tests is otherwise eligible for hiring. This is obviously not the case.

**CERTIFICATE OF SERVICE**

The undersigned certifies that on April 18, 2022, he electronically filed the foregoing document with the Clerk of the Court for Northern District of Illinois, using the CM/ECF system of the Court.

*/s/ Lyle K. Henretty*