**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOSEPH D.G. SIMPSON, *et al.*, on behalf of themselves and all others similarly situated, | ) ) | |
| | ) | Case No. 18-cv-553 |
| Plaintiffs, | ) | |
| | ) | Judge Sharon Johnson Coleman |
| | ) | Mag. J. Heather K. McShain |
| v. | ) | |
| | ) | |
| SHERIFF TOM DART, in his official capacity, *et al*. | ) | |
| | ) | |
| Defendants. | ) | |

## <u>PLAINTIFFS' REPLY BRIEF IN SUPPORT OF CLASS CERTIFICATION</u>

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  ARGUMENT ...................................................................................................... 2

    A.  The EEOC Charges Encompass the Class Claims ............................................ 2

    B.  Plaintiffs Have Properly Applied the Statute of Limitations in Their Proposed Class Definitions ...................................................................................................... 5

    C.  The Seventh Circuit Held that Plaintiffs Did Not Need to Offer Evidence About the Validity of the Tests to Satisfy the Commonality Requirement, and Defendants Are Asking the Court to Violate that Ruling. .......................................................... 8

    D.  Plaintiffs' Claims Satisfy the Commonality and Typicality Requirements Notwithstanding Differences in Preparation to Take the Tests, and Defendants Again Are Asking the Court to Violate the Seventh Circuit's Ruling. .......................... 9

    E.  The Three Components of the Physical Abilities Test ("PAT") Cannot Be Analyzed Separately .................................................................................................... 11

    F.  Each Class Satisfies the Requirements for Certification under Rule 23(b)(3). ............... 14

III. CONCLUSION ................................................................................................ 15

i

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bell v. PNC Bank, N.A.*,
  800 F.3d 360 (7th Cir. 2015) ...................................................................................15

*Bew v. City of Chi.*,
  252 F.3d 891 (7th Cir. 2001) ...................................................................................13

*Brand v. Comcast Corp.*,
  302 F.R.D. 201 (N.D. Ill. 2014)...............................................................................13

*Cheek v. Peabody Coal Co.*,
  97 F.3d 200 (7th Cir. 1996) .......................................................................................2

*Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of Chi.*,
  797 F.3d 426 (7th Cir. 2015) ...................................................................................10

*Conley v. Nestle USA, Inc.*,
  No. 09-CV-5996, 2011 U.S. Dist. LEXIS 8971 (N.D. Ill. Jan. 31, 2011) ................7

*Dear v. Shinseki*,
  578 F.3d 605 (7th Cir. 2009) .....................................................................................2

*Delaware State College v. Ricks*,
  449 U.S. 250 (1980)...............................................................................................6, 7

*Delgado v. Merit Sys. Prot. Bd.*,
  880 F.3d 913 (7th Cir. 2018) .....................................................................................2

*EEOC v. DHL Express United States*,
  No. 10 C 6139, 2021 U.S. Dist. LEXIS 253036 (N.D. Ill. Dec. 30, 2021) .............13

*EEOC v. O&G Spring & Wire Forms Specialty Co.*,
  38 F.3d 872 (7th Cir. 1994) .....................................................................................14

*Eggleston v. Chicago Journeymen Plumber's Local Union No. 130, U.A.*,
  657 F.2d 890 (7th Cir. 1981) .....................................................................................2

*Ezell v. Potter*,
  400 F.3d 1041 (7th Cir. 2005) ...................................................................................2

*Garrard v. Rust-Oleum Corp.*,
  No. 20-cv-00612, 2021 U.S. Dist. LEXIS 238566 (N.D. Ill. Dec. 14, 2021)............7

*Gen. Tel. Co. of the Southwest v. Falcon*,
    457 U.S. 147 (1982)...................................................................................................10

*Int'l Bhd. of Teamsters v. United States*,
    431 U.S. 324 (1977)...................................................................................................15

*Lewis v. City of Chicago*,
    560 U.S. 205 (2010)...............................................................................................1, 6, 7

*Lewis v. City of Chicago*,
    No. 98 C 5596 (N.D. Ill., Aug. 17, 2011) .................................................................14

*Livingston v. City of Chicago*,
    No. 16-10156, 2019 WL 194848 (N.D. Ill. Jan. 14, 2019)......................................4

*Mister v. Ill. Cent. Gulf R. Co.*,
    832 F.2d 1427 (7th Cir. 1987) ..................................................................................13

*Murdock-Alexander v. Tempsnow Empl. & Placement Servs., LLC*,
    No. 16-cv-5182, 2016 U.S. Dist. LEXIS 160616 (N.D. Ill. Nov. 21, 2016) ............7

*O'Rourke v. Cont'l Cas. Co.*,
    983 F.2d 94 (7th Cir. 1993) ...................................................................................3, 4

*Orlowski v. Dominick's Finer Foods, Inc.*,
    937 F. Supp. 723 (N.D. Ill. 1996) ..............................................................................5

*Oxman v. WLS-TV*,
    595 F. Supp. 557 (N.D. Ill. 1984) ..............................................................................4

*Palmer v. Shultz*,
    815 F.2d 84 (D.C. Cir. 1987) ...................................................................................12

*Port Auth. Police Asian Jade Soc'y of N.Y. & N.J. Inc. v. Port Auth. of N.Y. & N.J.*,
    681 F. Supp. 2d 456 (S.D.N.Y. 2010)......................................................................11

*Rosario v. Livaditis*,
    963 F.2d 1013 (7th Cir. 1992) ..................................................................................10

*Simpson v. Dart*,
    No. 21-8028, 2022 U.S. App. LEXIS 420 (7th Cir. Jan. 6, 2022)........................8, 9

*Stewart v. Gen. Motors Corp.*,
    542 F.2d 445 (7th Cir. 1976) ....................................................................................14

*Thomas v. City of Evanston*,
    610 F. Supp. 422 (N.D. Ill. 1985) ..............................................................................5

*Trout v. Lehman*,
 702 F.2d 1094 (D.C. Cir. 1983) ..........................................................................13

*U.S. E.E.O.C. v. Roadway Exp., Inc.*,
 No. 06 C 4805, 2007 WL 2198363 (N.D. Ill. July 31, 2007) ................................3, 4

*Vasich v. City of Chicago*,
 No. 11 C 04843, 2013 U.S. Dist. LEXIS 1740 (N.D. Ill. Jan. 7, 2013)....................5

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011)............................................................................................9, 10

*Wards Cove Packing Co. v. Atonio*,
 490 U.S. 642 (1989) ...............................................................................................12

*Washtenaw Cty. Emples. Ret. Sys. v. Walgreen Co.*,
 No. 15-cv-3187, 2018 U.S. Dist. LEXIS 53435 (N.D. Ill. Mar. 29, 2018)
 (Coleman, J.) ..........................................................................................................10

*Zollicoffer v. Gold Std. Baking, Inc.*,
 335 F.R.D. 126 (N.D. Ill. 2020)..........................................................................7, 15

**Statutes**

42 U.S.C. § 2000e–2(k)(1)(A)(i) ..........................................................................................6

42 U.S.C. § 2000e–2(k)(1)(A)(ii) .........................................................................................9

42 U.S.C. § 2000e-2(k)(1)(B)(i) ....................................................................................11, 12

**Rules**

Fed. R. Civ. P. 23 .................................................................................................................9

Fed. R. Civ. P. 23(a) ................................................................................................1, 10, 15

Fed. R. Civ. P. 23(b)(3).............................................................................................1, 14, 15

## I.  **INTRODUCTION**

Plaintiffs ask the Court to certify four classes challenging hiring exams that have disproportionately eliminated Black applicants for correctional officer positions at the Cook County Jail. Employment testing cases are paradigmatic cases for class certification. Defendants have not cited a single disparate impact case regarding a hiring exam denying certification.

Defendants advance three types of flawed arguments against certification. *First*, they mischaracterize the scope of the initially filed class charge, ignoring its breadth, including its mention of "the hiring process, *including the written exam [and] physical exam* …."  Ex. A (emphasis added). They also utterly ignore the scope of the EEOC's investigation of that charge, which included the written exams and the PAT.

*Second*, Defendants are also mistaken in their argument about statute of limitations law, which they wrongly argue precludes class certification here. They misconstrue directly on-point, controlling Supreme Court authority on this question, *Lewis v. City of Chicago*, 560 U.S. 205 (2010), which makes all the claims asserted by the proposed class here timely.

*Third*, Defendants contend that, with the exception of numerosity, Plaintiffs cannot satisfy any of the other requirements for certification under Rules 23(a) and (b)(3): commonality, typicality, adequacy, predominance, or superiority. But their arguments ask the Court to defy the Seventh Circuit's decision in this very case, conflict with other judicial precedents, and ignore or blatantly mischaracterize the evidence.

Following established law, the Court should certify all four proposed classes.

## II. **ARGUMENT**

### A.    **The EEOC Charges Encompass the Class Claims.**

Defendants' first argue that none of the proposed classes should be certified because, Defendants say, "none of the … filed charges … challenged the written exams or the PAT in any way." Resp. at 3. That argument is doubly wrong. It applies the wrong legal standards and ignores the relevant facts.

Title VII plaintiffs may pursue their claims if they are "reasonably related to the charges actually set forth in the administrative filing." *Delgado v. Merit Sys. Prot. Bd*., 880 F.3d 913, 926 (7th Cir. 2018) (citing *Dear v. Shinseki*, 578 F.3d 605, 609 (7th Cir. 2009). "Even a charge that is not explicit in an employee's complaint will be deemed exhausted if 'the current claim reasonably could have developed from the EEOC's investigation of the charges before it,' meaning that 'the EEOC charge and the complaint must describe the same conduct and implicate the same individuals.'" *Id.* (quoting *Ezell v. Potter*, 400 F.3d 1041, 1046 (7th Cir. 2005)); *accord Cheek v. Peabody Coal Co*., 97 F.3d 200, 202 (7th Cir. 1996). As this Court previously recognized in denying the Merit Board's motion to dismiss the claims against it, "Title VII does not require procedural exactness, and EEOC charges must be construed with the 'utmost liberality' to join parties sufficiently named or alluded to in the factual statement." ECF No. 126 at 5 (quoting *Eggleston v. Chicago Journeymen Plumber's Local Union No. 130, U.A.*, 657 F.2d 890, 906 (7th Cir. 1981)).

Frederick Merkerson filed the first charge filed by any Plaintiff here. His charge specifically referred to both "the written exam" and the "physical exam" and challenged the entire "hiring process" and its "hiring practices." Ex. A, ¶¶ 6-7, 14-16. His charge was broad: the CCSO "is rejecting numerous qualified minority (non-white) applicants" and "[i]n recent years,

the Sheriff's Office's hiring practices for correctional officers have resulted in a precipitous and substantial drop in the number and percentage of African-Americans being hired." *Id.*, ¶¶ 13, 14. He specifically mentioned both disparate treatment and disparate impact claims. *Id.*, ¶ 16. And although he was eliminated during a step in the hiring process after the written tests and the PAT, he did not limit his charges about the disparate impact of the hiring process to those later steps: he blamed the "hiring practices" and "hiring process" for the lack of African-American hiring. *Id.*, ¶¶ 14, 15, 16. These allegations identify the conduct that give rise to the claims of the four proposed classes, *i.e.,* the tests that are part of the hiring process have a disparate impact on African American applicants. Moreover, Mr. Merkerson identified both the Merit Board and the CCSO as conducting this hiring process. *Id.*, ¶¶ 5, 7, 9-11. Defendants ignore all these allegations in the charge.

Mr. Merkerson's charge clearly provided notice of a challenge to testing. But even if it had not or even if its scope had been ambiguous, "issues implied by a charge and communicated to the employer in the course of investigation can enlarge the set of claims open to litigation." *O'Rourke v. Cont'l Cas. Co.,* 983 F.2d 94, 97 (7th Cir. 1993). Even when "the EEOC's actual investigation is broader than the underlying charge" – which is not the case here – if "the employer has notice of the nature of the broader claims and an opportunity to conciliate those claims, the purposes behind the exhaustion of administrative remedies requirement are met and the employee should not be barred from filing a judicial complaint addressing the broader investigated claims or claims reasonably related to the investigated claims." *U.S. E.E.O.C. v. Roadway Exp., Inc.*, No. 06 C 4805, 2007 WL 2198363, at *4 (N.D. Ill. July 31, 2007).

Here, the EEOC's investigation indisputably covered and gave the Defendants notice of claims about testing, a fact that the Defendants ignore. EEOC investigators asked Defendants'

counsel on July 20, 2016, to create an Excel spreadsheet beginning on January 1, 2014, with specific data concerning each applicant's experience in the Merit Board and CCSO stages of the hiring process. As to the former, the EEOC asked for, among other data, "Race," "Score on Written examination," "Score on the SBACC [the second written test]," and "Passed the Physical Ability Test (y/n)." Ex. B. In the same email, the EEOC asked defendants to "provide what constitutes a passing score for the written examination and the SBACC." *Id.* A CCSO lawyer emailed back on August 1 providing information about both written tests and the PAT. *Id.* During a meeting between Defendants and EEOC investigators, Defendants described the entire hiring process, including the written tests and the PAT. Ex. C. As a result, Defendants indisputably knew that the EEOC's investigation included the written and physical abilities tests. And therefore, claims about testing are "open to litigation" here, *O'Rourke*, 983 F.2d at 97, even without parsing the wording of the charge (which, however, also clearly mentions testing).

Defendants have identified no authority to support their erroneous position that Plaintiffs who did not file EEOC charges are barred from piggybacking on the EEOC charges of the filing Plaintiffs because the latter group passed the written exams and PAT. In fact, this Court already correctly applied the Seventh Circuit's "single-filing" rule in allowing Plaintiff Joseph Simpson to "piggyback" on the filing plaintiffs' EEOC charges. ECF No. 126 at 5 n.1. A requirement that the plaintiffs filing the EEOC charge be eliminated in the same phase of the hiring process as the non-filing plaintiffs has no legal basis. *See, e.g., Livingston v. City of Chicago*, No. 16-10156, 2019 WL 194848, at *2 (N.D. Ill. Jan. 14, 2019) (permitting non-filing plaintiff in Title VII gender discrimination lawsuit to pursue claims that a physical fitness exercise she failed was discriminatory by piggybacking on EEOC charges filed by plaintiffs who failed different physical abilities tests that did not identify those tests); *see also Oxman v. WLS-TV*, 595 F. Supp.

4

557, 558–60 (N.D. Ill. 1984) (race discrimination claims mentioned in complaint were "reasonably related" to EEOC charge though filing plaintiff alleged that he personally suffered only discrimination on the basis of religion and age—not race); *Thomas v. City of Evanston*, 610 F. Supp. 422, 437 (N.D. Ill. 1985) (complaint's Title VII challenge to rank-ordering of candidates who passed the PAT based on their PAT test scores was "reasonably related" to EEOC charge though plaintiff who filed charge failed PAT). Nor is there any requirement that the representative plaintiff for each class have filed an EEOC charge. *See Orlowski v. Dominick's Finer Foods, Inc.*, 937 F. Supp. 723, 734-35 (N.D. Ill. 1996) (rejecting contention that Seventh Circuit case law supports "position that a potential plaintiff cannot rely on the filed EEOC charge of an already named plaintiff, where the two individuals could not represent the same class in the suit").

Against all this caselaw, Defendants cite only one case in support of their position, *Vasich v. City of Chicago*, No. 11 C 04843, 2013 U.S. Dist. LEXIS 1740 (N.D. Ill. Jan. 7, 2013), which they blatantly misread. There, the charges did not support a class action because "[e]ach charge spoke only of discrimination against the charging woman herself …. Not one of them referred to any other applicants or to discrimination against women in general." *Id.* at *15. The *Vasich* charges had no class allegations. Merkerson's charge, by contrast, has explicit class allegations, as this Court has held. ECF No. 55 at 4. Merkerson filed "on my own behalf and on behalf of others similarly situated," whom his charge repeatedly refers to as "other African-American and minority applicants." Ex. A, ¶¶ 2, 15, 16. *Vasich* is irrelevant to this case.

**B.      Plaintiffs Have Properly Applied the Statute of Limitations in Their Proposed Class Definitions.**

Next, Defendants ask the Court not to certify the four proposed classes because, supposedly, Plaintiffs seek to include in the class some people whose claims are time-barred.

5

Resp. at 5. Defendants' argument is legally erroneous. Plaintiffs have correctly applied *Lewis v. City of Chicago*, 560 U.S. 205 (2010), to define the classes.

As Plaintiffs showed in their opening brief, *Lewis* holds in a 9-0 decision, relying on the statutory text of 42 U.S.C. § 2000e–2(k)(1)(A)(i) that a disparate impact claim arises every time an employer "uses" a practice that has an adverse impact against members of a protected group, 560 U.S. at 212-14, and that an employer "uses" a test with every round of hiring in which it limits hires to applicants who passed the test while excluding applicants who did not. *Id.* at 214. In this case, Defendants used the tests each time it hired a class of correctional officers and excluded applicants who failed the tests. It follows that, as in *Lewis*, class members who failed a test and, as a result, were excluded from a class hired within 300 days of the first charge (in this case, within 300 days of March 14, 2015), have timely claims.[1] And that is how Plaintiffs have defined the testing classes in this case.

Defendants' attempts to avoid *Lewis* miss the mark. Resp. at 5-6. They completely ignore that *Lewis* rested on *Title VII's statutory language,* not factual particulars, and therefore cannot be distinguished. They also ignore that, even if *Lewis* had not announced a rule applicable to all disparate impact testing cases grounded in the text of Title VII, not factual particulars, the Supreme Court's unanimous decision in *Lewis* would *still* apply here because of the similarity of the factual particulars. Like this case, *Lewis* was about: (i) use of a standardized test, (ii) with a cutoff score, (iii) that determined eligibility to move forward (iv) in a job selection process. *Id.* at 208-09. And Defendants' suggestion that this Court should distinguish *Lewis* based on a pre-*Lewis* case, *Delaware State College v. Ricks*, 449 U.S. 250, 259 (1980), is an ostrich-like argument, akin to a

---

[1]     Stated differently, class members who sat for and failed the first written test in July 2014 were excluded from classes hired after March 2015. Not one person sitting for the first written test in or after July 2014 was, or could have been, hired outside the class period.

party burying its head in the sand. *Lewis* itself rejects any distinction based on *Ricks*, making clear that *Ricks* and similar decisions linking accrual to the date applicants first learn about their rejection *applies only in disparate **treatment** cases*—and does *not* apply in disparate *impact* cases.. 560 U.S. at 215. As other Courts have recognized, *Lewis* is controlling here. *See, e.g., Murdock-Alexander v. Tempsnow Empl. & Placement Servs., LLC,* No. 16-cv-5182, 2016 U.S. Dist. LEXIS 160616, at *32 (N.D. Ill. Nov. 21, 2016) ("every 'use' of an employment practice that causes a disparate impact 'is a separate actionable violation of Title VII' with its own statute-of-limitations clock"); *Conley v. Nestle USA, Inc.,* No. 09-CV-5996, 2011 U.S. Dist. LEXIS 8971, at *11 (N.D. Ill. Jan. 31, 2011) ("*Lewis*, therefore, stands for the proposition that later implementation of a policy that causes a disparate impact can qualify as a new, actionable 'employment practice.'").

Finally, Defendants wrongly argue that the four classes should be denied based on its limitations period challenges. They admittedly are not challenging Class 2 on statute of limitations grounds at all. Resp. at 4 ("three out of the four class periods begin in July 2014, instead of March 14, 2015"). And if the other three classes did have an erroneous start date – they do not – a court should redefine, not deny, a class to correct the date. *See, e.g., Garrard v. Rust-Oleum Corp.*, No. 20-cv-00612, 2021 U.S. Dist. LEXIS 238566, at *18-19 (N.D. Ill. Dec. 14, 2021) (declining to strike class allegations because "[t]he class definition can ultimately be revised to avoid statute of limitations issues"); *Zollicoffer v. Gold Std. Baking, Inc*., 335 F.R.D. 126, 165 (N.D. Ill. 2020) (reserving adoption of final class definition pending resolution of statute of limitations issue).

C.   **The Seventh Circuit Held that Plaintiffs Did Not Need to Offer Evidence About the Validity of the Tests to Satisfy the Commonality Requirement, and Defendants Are Asking the Court to Violate that Ruling.**

The Defendants also try to revive their argument that this Court should deny class certification because of evidence that the tests are "valid." But the Seventh Circuit could hardly have been clearer in its rejection of that argument, pointing out that that it is a merits question and, therefore, irrelevant to class certification. Indeed, as it explained, the answer as to whether the tests were valid "seems likely to be the same for each class member" and thereby is *itself* a common issue supporting the grant, not the denial, of class certification:

> To assess whether Simpson's claims presented common questions, the district court **did not need to consider** whether Simpson's statistical experts controlled for racially neutral factors or **whether the tests had been validated for use at other departments**. *These considerations go not to commonality but instead to whether the exam subclasses can ultimately succeed on the merits.* We cannot know at this stage. But what we can say is that, **as to each subclass, the answer seems likely to be the same for each class member. That is all that Rule 23(a)(2) requires.**

*Simpson v. Dart*, No. 21-8028, 2022 U.S. App. LEXIS 420, at *12 (7th Cir. Jan. 6, 2022) (emphases added). There aren't two ways to look at this. Defendants are inviting this court to defy the Seventh Circuit's mandate.

In fact, Defendants ultimately concede that "[a] fair reading of the Seventh Circuit's opinion suggests that a statistical disparity alone *raises an appropriate question for class certification* in a disparate impact case." Resp. at 8. Yet they then speculate that this case could conceivably pose an exception to that rule. Because "the record contains validity evidence supporting the [two written] exams," they argue, "[t]he appropriate common question for class purposes … is whether the test[s were] validated properly" and, they say (wrongly), Plaintiffs never raised "at least an arguable challenge to the validity evidence in the record." . *Id.* at 8, 9. All of that ignores the Seventh Circuit's mandate. Defendants made the same argument to the Seventh Circuit – indeed, it was their **principal** argument to the Court of Appeals. Resp. to Pet.,

App. ECF No. 5, at 11-17. The Seventh Circuit rejected it, concluding that validity questions should be decided on the merits, not at class certification. 2022 U.S. App. LEXIS 420, at *12. The Defendants' suggestion that "[t]he Seventh Circuit never precisely addressed this legal point or the arguments made by Defendants" is simply false. Resp. at 8. That is sufficient by itself. But the Defendants' effort to lead this Court astray goes even further. They falsely assert that Plaintiffs have "ignore[d] validity evidence in the record." *Id.* at 9. Plaintiffs have not "ignored" Defendants' validity evidence. Rather, this Court's scheduling order calls for the parties to exchange expert reports supporting their positions on test validity 90 days *after* a ruling on class certification. ECF 253. And as Defendants know, Plaintiffs have retained experts to address and present evidence of the (in)validity of each of the Defendants' hiring exams. But the court's schedule never contemplated presenting merits evidence until *after* class certification.

**D.**     **Plaintiffs' Claims Satisfy the Commonality and Typicality Requirements Notwithstanding Differences in Preparation to Take the Tests, and Defendants Again Are Asking the Court to Violate the Seventh Circuit's Ruling.**

As the Seventh Circuit stated, once Plaintiffs identified "the three challenged exams, the ensuing Rule 23 analysis requires no inquiry into the merits to determine that the remaining two elements of [their] disparate impact claims ***almost necessarily present questions common to the class***—whether those exams in fact caused a disparate impact and, if so, whether the use of the exams was justified by business necessity." *Simpson*, 2022 U.S. App. LEXIS 420, at *11 (emphasis added). Disparate impact challenges to tests also necessarily present a third common question: lesser discriminatory alternative. *See* 42 U.S.C. § 2000e–2(k)(1)(A)(ii). The Court of Appeals in this regard elaborated on the Supreme Court's statement in *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 353 (2011), that "'a class action on behalf of every applicant or employee who might have been prejudiced by [a biased testing procedure] clearly would satisfy the

commonality and typicality requirements of Rule 23(a)'" (quoting *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 159 n.15 (1982)).[2]

Despite these three common questions raised by Plaintiffs' challenge to the tests, Defendants claim that differences among test takers in how they prepared for the tests or the number of times they took the tests destroy commonality. Resp. at 10-12. Once again, Defendants cite no authorities in support of their argument. And the argument is in fact unsupportable. In any group of test takers, no two are ever likely to have prepared the same way, for the same amount of time (or on the same night's sleep, or having the same prior experience or education, or aptitude, or having eaten the same breakfast). But that's not required; otherwise, there would be no class action challenges to tests and *Dukes* and *Falcon* wrongly held up challenges to tests as appropriate for certification. Defendants cannot explain how their extreme position could possibly be reconciled with these cases or the Seventh Circuit's statement that disparate impact challenges to tests "almost necessarily present questions common to the class."

Everything that is true of commonality here also applies to typicality To establish typicality, "[a] class representative's injuries … must arise from the same common events, practices, or conduct and must be based on the same legal theory." *Washtenaw Cty. Emples. Ret. Sys. v. Walgreen Co*., No. 15-cv-3187, 2018 U.S. Dist. LEXIS 53435, at *15 (N.D. Ill. Mar. 29, 2018) (Coleman, J.) (citing *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). Here, the class representatives took the same tests as the class members and are asserting the same

---

[2]     Defendants suggest that *Dukes* and *Falcon* are limited to biased testing *procedures* and do not include tests that, although fairly administered, are still biased in the sense that they disproportionately disqualify a protect group without a job-related justification. . Resp. at 12 & n.5. Unsurprisingly, they cite no authority for their invented distinction, which is inconsistent with Title VII. *See, e.g., Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of Chi.,* 797 F.3d 426, 435 (7th Cir. 2015) (applying *Dukes* analysis to the criteria used by Board to identify schools for possible reconstitution, not merely to the Board's procedures for administering those criteria).

disparate impact claims. Those similarities establish typicality; Defendants have identified no authority suggesting that differing preparation levels defeat it.

**E.**  **The Three Components of the Physical Abilities Test ("PAT") Cannot Be Analyzed Separately.**

Defendants also urge the Court to reject Class 4, the proposed class of African Americans who failed the PAT. That class should not be certified, Defendants say, because the PAT has three components (sit-ups, a bench press, and a 1 ½ mile run), and class members did not fail the test for a common reason. Some class members failed sits up and others a later component. Resp. at 13. But what Defendants ignore is that *when records do not exist* to allow a hiring practice to be analyzed step-by-step, then Title VII instructs that the practice should, in fact, be analyzed for its bottom-line result. 42 U.S.C. § 2000e-2(k)(1)(B)(i); *Port Auth. Police Asian Jade Soc'y of N.Y. & N.J. Inc. v. Port Auth. of N.Y. & N.J.*, 681 F. Supp. 2d 456, 464 (S.D.N.Y. 2010) (considering multi-step promotional process as a whole, reasoning that "whether a particular step causes a disparate impact" could not be determined when "records do not exist for every step").

Title VII provides that if "the elements of a respondent's decisionmaking process are not capable of separation for analysis," then the decisionmaking process should be analyzed "as one employment practice." 42 U.S.C. § 2000e-2(k)(1)(B)(i). The Defendants do not dispute this proposition. *See* Resp. at 14 (acknowledging "statutory exception" allowing a "scoring process" that is "not capable of separation for analysis" to "be analyzed 'as one employment practice'"). And they cannot credibly dispute the application of that section to this case.

The records the Defendants made and kept of class members' PAT results are grossly incomplete, and the holes in those records make it impossible to analyze how many applicants of each race failed each component of the PAT ( the sit-up, bench press, or 1 ½ mile run). Defendants' computerized records do not identify the component that an applicant failed. Ex. D,

¶ 4. Defendants point to paper records but neglect to mention that those paper records lack any data concerning 19 administrations of the PAT in 2015 and 2016. Ex. D, ¶ 9; Ex. E, ¶ 3. Thirty one percent of the applicants who failed the PAT between mid-2014 and the end of 2018 did so during one of those 19 administrations of the test. Ex. D, ¶ 11. Plaintiffs also compared the number of people shown to have passed and failed the PAT in the paper records to the numbers shown in the computerized records for the first administration of the PAT each year from 2014 through 2018 for which Defendants have produced paper records. Ex. E, ¶¶ 4-6. For only one of the five sampled dates did the paper records include records for even half the applicants who failed the test. Ex. D, ¶¶ 12-13. Overall, the paper records are missing information on about 2/3 of the applicants who failed the PAT during those five sampled dates. *Id.*[3] Combining the effects of the 19 dates for which all records are missing and the shoddy recordkeeping for the other test dates, the paper records at best identify the component failed for only about ¼ of the applicants.

No meaningful analysis could be performed on such incomplete records. But more important for class certification, well over half the Black applicants who failed the PAT could not be separated into a "sit up class," a "bench press class," or a "run class." Because of Defendants' poor recordkeeping, "the elements of [Defendants'] decisionmaking process are not capable of separation for analysis"; as a result, the PAT should "be analyzed as one employment practice." 42 U.S.C. § 2000e-2(k)(1)(B)(i); *see Wards Cove Packing Co. v. Atonio,* 490 U.S. 642, 650-51 (1989) (endorsing use of alternative statistics when preferred "statistics will be difficult if not impossible to ascertain"); *Palmer v. Shultz,* 815 F.2d 84, 110 (D.C. Cir. 1987) ("'plaintiffs cannot legitimately be faulted for gaps in their statistical analysis when the information

---

[3]     The records also are incomplete as to applicants who passed the PAT but anyone shown as passing the PAT in the computerized records necessarily passed all three components.

necessary to close those gaps was possessed only by defendants and was not furnished either to plaintiffs or to the Court'") (quoting *Trout v. Lehman*, 702 F.2d 1094, 1102 (D.C. Cir. 1983)). Defendants' shoddy recordkeeping makes it unnecessary to address whether, if the paper records were substantially complete, three component classes would be appropriate instead of a single class challenging the PAT.

Defendants also briefly argue that, because the rate at which Black candidates pass the PAT is 83% of the White passage rate – *i.e.,* greater than 80% – Plaintiffs cannot bring a disparate impact challenge to the PAT. Resp. at 14. Once again, Defendants are trying to inject a merits issue into a class certification decision and, once more, they are wrong on the law.

The EEOC's 80% Rule is a mere "rule of thumb" for the courts. *Brand v. Comcast Corp*., 302 F.R.D. 201, 210 (N.D. Ill. 2014). As the Seventh Circuit explained, "the 80% guideline may be ignored when other statistical evidence indicates a disparate impact." *Bew v. City of Chi*., 252 F.3d 891, 893 (7th Cir. 2001) (approving of district court ruling that a statistically significant disparity measured by more than five standard deviations "established prima facie disparate impact"). An analysis showing a disparity of at least two standard deviations suffices for a prima facie showing of disparate impact. *See, e.g., Mister v. Ill. Cent. Gulf R. Co.,* 832 F.2d 1427, 1431 (7th Cir. 1987) ("findings should be accepted as 'statistically significant' when the observations are more than two standard deviations away from the values" that would result if there was no discrimination"). Here, the disparity between White and Black passage rates is measured by over ten standard deviations, Ex. F at 29, a disparity so huge that for all practical purposes it could not have occurred by chance. *EEOC v. DHL Express United States*, No. 10 C 6139, 2021 U.S. Dist. LEXIS 253036, at *28 (N.D. Ill. Dec. 30, 2021) (disparity measured by eight standard deviations would occur as a result of chance less than two times in ten trillion).

13

**F.**     <u>**Each Class Satisfies the Requirements for Certification under Rule 23(b)(3).**</u>

Finally, Defendants argue that individual questions will predominate because the exams are the first steps in a long hiring process and some class members would have been eliminated at later steps, making relief inappropriate for them. But as Plaintiffs explained in their opening brief (at pp. 8 & 9 & n.10), damages in class hiring cases generally are calculated on a class-wide rather than individual basis. Again, Defendants engage in an "ostrich" defense: they have not responded to this point or cited any contrary authority. But that does not make the authorities cited by Plaintiffs go away.

Under Defendants' unsupported view of the law, no hiring class action in which applicants outnumbered positions, and no hiring class action challenging a process that included steps after the challenged practice, could ever be certified under Fed. R. Civ. P. 23(b)(3) to seek a monetary recovery. The only possible relief would be injunctive, as Defendants come close to admitting. Resp. at 15. But that is very clearly not the case, as an unbroken and uncontradicted line of cases to the contrary demonstrates. *See, e.g., EEOC v. O&G Spring & Wire Forms Specialty Co.,* 38 F.3d 872, 879 & n.9 (7th Cir. 1994) (describing calculation of aggregate or "class-wide [backpay] relief" in hiring discrimination cases); *Stewart v. Gen. Motors Corp.,* 542 F.2d 445, 452 (7th Cir. 1976) (affirming use of class-wide rather than individualized backpay calculations to avoid the "quagmire of hypothetical judgments" that would inevitably be required to identify which particular individuals, out of a large class, would have been hired); *Lewis v. City of Chicago*, No. 98 C 5596 (N.D. Ill., Aug. 17, 2011), ECF No. 470 § C (describing and ordering calculation of aggregate backpay and method for distributing it to class members). Defendants are inviting the court, once again, to defy Seventh Circuit precedents.

14

But, Defendants assert, the methodology adopted by the Seventh Circuit (and every other appellate and district court to consider whether to certify a hiring discrimination class action) will result in some class members receiving awards even though they could not meet "the remaining rigorous qualifications for employment at the CCSO." Resp. at 15. Not true. A ruling that one or more of the tests caused an illegal disparate impact will create a rebuttable presumption that each class member is entitled to relief. *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 359 n.45 (1977) ("proof of a discriminatory pattern and practice creates a rebuttable presumption in favor of individual relief"). If Defendants try to rebut the entitlement to backpay of one or more class members, the need for individualized proof will not defeat predominance or superiority. *See Bell v. PNC Bank, N.A.*, 800 F.3d 360, 379 (7th Cir. 2015) ("The fact that the plaintiffs might require individualized relief or not share all questions in common does not preclude certification of a class.") (citing five prior Seventh Circuit decisions); *Zollicoffer*, 335 F.R.D. at 163 ("Plaintiffs' central contentions will predominate in the liability phase of the [employment discrimination class] case, and the Court can conduct individualized inquiries to determine damages if necessary."). The proposed classes meet both requirements for Rule 23(b)(3) even if Defendants choose to engage in what Plaintiffs believe will prove to be a largely wasteful and fruitless strategy of challenging individual class members' rights to recover.

## III.  **CONCLUSION**

All four proposed classes satisfy the requirements of Rule 23(a) and 23(b)(3) for certification.  For the reasons stated above and in the prior proceedings in this case, as well as in the Seventh Circuit's opinion of January 6, 2022, the Court should certify the four proposed classes.

Dated:  May 2, 2022                                      Respectfully submitted,

/s/ Michael Lieder

*One of the attorneys for Plaintiffs*

Marni Willenson
marni@willensonlaw.com
WILLENSON LAW, LLC
3420 W. Armitage Ave., Ste. 200
Chicago, IL 60647
P:312.508.5380
F:312.508.5382

Cyrus Mehri
CMehri@findjustice.com
Michael Lieder
MLieder@findjustice.com
Joshua Karsh
jkarsh@findjustice.com
MEHRI & SKALET, PLLC
2000 K St., NW, Ste. 325
Washington, D.C. 20006
202.822.5100

Matthew J. Piers
mpiers@hsplegal.com
Margaret E. Truesdale
mtruesdale@hsplegal.com
HUGHES SOCOL PIERS RESNICK & DYM, LTD.
70 W. Madison Street, Suite 4000
Chicago, IL 60602
312.580.0100

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 2, 2022, I caused a copy of the foregoing document to be served via the electronic case file system upon counsel of record for all parties.


<u>/s/ Michael Lieder</u>
One of the attorneys for Plaintiffs