IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH D.G. SIMPSON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 18-cv-0553 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| SHERIFF TOM DART, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

After the Court denied plaintiffs' motion for class certification on September 13, 2021, plaintiffs petitioned the Seventh Circuit for permission to appeal the class certification ruling. The Seventh Circuit granted plaintiffs' petition under Federal Rule of Civil Procedure 23(f) and vacated the Court's denial of class certification as to certain subclasses. *See Simpson v. Dart*, 23 F.4th 706 (7th Cir. 2022). After the mandate issued, plaintiffs filed a third amended complaint and the parties filed supplemental class certification briefs under Rules 23(a) and 23(b)(3). For the following reasons, the Court, in its discretion, grants plaintiffs' motion for class certification in accordance with this ruling.

**Background**

Plaintiffs, on behalf of themselves and others similarly situated, filed this putative class action challenging the hiring practices for Correctional Officers at the Cook County Department of Corrections as racially discriminatory against African-Americans. Plaintiffs bring this lawsuit against Cook County Sheriff Tom Dart in his official capacity and the Cook County Sheriff's Merit Board. At issue in this class certification motion is plaintiffs' Title VII disparate impact claim in relation to certain hiring steps conducted by the Merit Board. *See* 42 U.S.C. § 2000e-2(k)(1)(A)(i).

The Correctional Officer hiring process consists of several steps conducted by the Merit Board and the Sheriff's Office. Applicants must first successfully complete the Merit Board process

and obtain certification before they are eligible to begin the Sheriff's hiring process. The Merit Board's certification process has seven steps: (1) screening for minimum qualifications; (2) an initial written examination; (3) a second written examination; (4) a physical ability test; (5) finger printing and drug testing; (6) a personal history questionnaire and follow-up interview; and (7) final review by the Merit Board members. Once the Merit Board certifies an applicant as eligible to be hired, the Sheriff's Office makes the final hiring decision.

At issue in plaintiffs' motion for class certification are the Merit Board's hiring examinations, namely, the initial written examination, the second written examination, and the physical ability test. In their third amended complaint, plaintiffs set forth four subclasses encompassing these examinations:

- Class 1. All Black applicants for Correctional Officer positions at the Cook County Jail who took and did not pass the first written test during or after July 2014 and before April 2016.[1]

- Class 2. All Black applications for Correctional Officer positions at the Cook County Jail who took and did not pass the first written test during or after April 2016.

- Class 3. All Black applicants for Correctional Officer positions at the Cook County Jail who took and passed the first written test during or after July 2014 and then took but did not pass the second written test.

- Class 4. All Black applicants for Correctional Officer positions at the Cook County Jail who took and passed the first written test during or after July 2014, but did not pass the physical abilities test.

**Title VII Disparate Impact Claim**

To give context to plaintiffs' motion for class certification, the Court turns to the nature of Title VII disparate impact claims. "Title VII prohibits employment practices that have a disproportionately adverse impact on employees with protected characteristics, even if the impact is unintended." *Ernst v. City of Chicago*, 837 F.3d 788, 794 (7th Cir. 2016). "A plaintiff establishes a

---

[1] The first written examination was modified in April 2016, therefore, plaintiffs divided the subclasses based on the two different versions of the first written examination.

2

prima facie violation of the disparate impact statute by demonstrating that an employer uses 'a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin.'" *CTU v. Board of Ed., City of Chicago*, 14 F.4th 650, 655 (7th Cir. 2021) (quoting 42 U.S.C. § 2000e-2(k)(1)(A)(i)). Once a plaintiff establishes a prima facie violation, "[e]mployers can defend against a disparate-impact claim by demonstrating that the challenged practice is job-related for the employee's position and consistent with business necessity." *Ernst*, 837 F.3d at 794. "The burden then shifts back to the plaintiff to show that the employer refused to use an available yet equally valid and less discriminatory practice." *CTU*, 14 F.4th at 655.

**Legal Standard**

"To achieve certification, a proposed class under Rule 23(b) must meet the requirements of Rule 23(a)—numerosity, typicality, commonality, and adequacy of representation—and one of the alternatives listed in Rule 23(b)." *Howard v. Cook County Sheriff's Office*, 989 F.3d 587, 597 (7th Cir. 2021); *see also Simpson*, 23 F.4th at 711. Once plaintiffs shows all of Rule 23(a)'s requirements, if they seek class certification under Rule 23(b)(3), the district court must then determine whether common questions of law or fact predominate over individual questions and if the class action is superior to other litigation methods. *See Howard*, 989 F.3d at 597.

**Discussion**

*Title VII's 300-Day Limitations Period*

Before examining the class certification requirements under Rule 23(a), the Court turns to defendants' argument that plaintiffs are attempting to extend their Title VII class period by defining three of the four subclasses with a starting date of July 2014, which is well over 300 days before the first EEOC Charge was filed on January 8, 2016. *See Stepney v. Naperville Sch. Dist. 203,* 392 F.3d 236, 239 (7th Cir. 2004) ("Under Title VII, a plaintiff in Illinois must file an employment discrimination charge with the EEOC within 300 days after the alleged unlawful employment practice occurred.").

3

Rather than June 2014, defendants argue the starting point of the subclasses should be March 14, 2015, which is 300 days prior to the first EEOC Charge that was filed on January 8, 2016.

In determining the timeliness of the subclass claims, the Court must identify the precise "unlawful employment practice," as well as the occurrence that triggers the 300-day limitations period. *See Lewis v. City of Chicago, Ill.*, 560 U.S. 205, 210–11 (2010). In *Lewis*, after potential firefighters took an examination, the City categorized the applicants and put them on lists for future hiring. In this context, the *Lewis* Court held "a plaintiff who does not file a timely charge challenging the *adoption* of a practice—here, an employer's decision to exclude employment applicants who did not achieve a certain score on an examination—may assert a disparate-impact claim in a timely charge challenging the employer's later *application* of that practice." *Id.* at 208 (emphasis in original). To clarify, in *Lewis*, the adoption of the allegedly discriminatory practice was the creation of the eligibility lists that reflected the examination scores, and the City's application of that practice was each time the City filled a new class of firefighters. *Id.* at 212. Thus, each round or wave of hiring triggered the 300-day limitations period because the City's later implementation of its discriminatory policy qualified as a new "unlawful employment practice." *See Lewis v. City of Chicago, Ill.*, 643 F.3d 201, 203 (7th Cir. 2011); *Conley v. Nestle USA, Inc.,* No. 09-cv-5996, 2011 WL 332525, at *4 (N.D. Ill. Jan 31, 2011) (Dow, J.).

Here, plaintiffs first contend the unlawful hiring practice involves the written and physical examinations and that the 300-day period was triggered when class members were excluded from each round of hiring. Plaintiffs' first assertion squares with the *Lewis* Court's holding. Yet, to reach back to July 2014, plaintiffs also argue that the occurrence triggering the 300-day limitations period was when certain class members failed an examination. Plaintiffs explain that the written testing date of July 2014 should be included in the class definition because it corresponds to hiring rounds that took place after March 14, 2015, which was 300 days before the first EEOC charge was filed.

4

The Supreme Court's decision in *Lewis* does not support plaintiffs' argument because "*Lewis* stands for the proposition that later implementation of a policy that causes as disparate impact can qualify as a new, actionable 'employment practice.'" *Conley*, 2011 WL 332525, at *4. The *Lewis* Court did not hold that a plaintiff can reach back to the testing date even it if it outside of the 300-day period. Accordingly, to reach back to June 2014, plaintiffs must have filed an EEOC Charge sometime in March 2015, which they failed to do.

The Court, however, will not deny plaintiffs' motion for class certification based on these class definitions as defendants argue. Instead, plaintiffs' subclasses 1, 3, and 4 must include the time period starting on March 14, 2015, which is 300 days prior to the first EEOC Charge, rather than July 2014.

*Commonality*

Turning to the four factors set out in Rule 23(a), defendants do not challenge the numerosity requirement under Rule 23(a)(1). Defendants, however, argue that plaintiffs' subclasses fail Rule 23(a)(2)'s commonality factor, which requires questions of law or fact common to the class. "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014). The *Simpson* panel provided the Court with significant guidance on making this determination, including that a "Title VII plaintiff can establish liability on a disparate impact theory by pointing to an employment policy that 'causes racial discrimination' and 'is not justified by business necessity.'" *Simpson*, 23 F.4th at 711 (citation omitted).

In their briefs on remand, plaintiffs have pointed to discrete employment actions, namely, the administration of the three standardized tests, which do not involve the exercise of discretion. *Id.* at 712. Plaintiffs also fulfilled the requirement outlined by *Simpson* that the administration of these standardized tests allegedly caused racial discrimination. *Id.* at 711-12. Moreover, whether the

5

examinations actually caused disparate impact and whether the use of the examinations was justified as a business necessity are questions common to the class. *See id.* at 712. Accordingly, plaintiffs' disparate impact claims are well-suited for class adjudication. Plaintiffs have thus fulfilled the commonality requirement under Rule 23(a)(2).

In response, defendants argue plaintiffs cannot establish commonality because they did not challenge the validity of the standardized tests. Defendants' argument contradicts the *Simpson* decision where the Seventh Circuit specifically stated:

> To assess whether Simpson's claims presented common questions, the district court did not need to consider whether Simpson's statistical experts controlled for racially neutral factors or whether the tests had been validated for use at other departments. These considerations go not to commonality but instead to whether the exam subclasses can ultimately succeed on the merits. We cannot know at this stage. But what we can say is that, as to each subclass, the answer seems likely to be the same for each class member. That is all that Rule 23(a)(2) requires.

*Id.* at 712. By making this argument, defendants ask the Court to ignore the Seventh Circuit's guidance, which this Court will not do.

*Typicality*

Defendants also challenge plaintiffs' subclasses under Rule 23(a)(3)'s typicality factor, which requires "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The typicality and commonality elements have considerable overlap, "so they often rise or fall together." *Howard*, 989 F.3d at 598. A plaintiff's "claim is typical if it 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members and her claims are based on the same legal theory." *McFields v. Dart*, 982 F.3d 511, 517 (7th Cir. 2020) (citation omitted). There is no question the named plaintiffs' claims arise from the standardized tests and are based on the same legal theory, disparate impact. As such, the representative plaintiffs' claims have the same essential characteristics as the class claims.

Defendants nonetheless argue the representative plaintiffs cannot satisfy the typicality

6

requirement because they prepared for the standardized tests in different ways and attempted to pass the examinations at different times. These minor variances make no difference to the Court's class certification analysis, especially because defendants have not identified any legal authority suggesting these differences defeat the typicality requirement. *See Reed v. Brex, Inc.,* 8 F.4th 569, 581 (7th Cir. 2021) ("arguments unsupported by pertinent authority are waived.").

*Adequacy*

Next, defendants contend there are adequacy issues under Rule 23(a)(4) as to the named plaintiffs based on the scope of their EEOC charges. Defendants assert the "scope of the charge issues will be addressed at the summary judgment stage, but those issues have clear implications for class certification as well." Because defendants tacitly admit this issue is best left for summary judgment, the Court will not address the scope of the EEOC charges at this juncture. *See, e.g., Vasich v. City of Chicago*, No. 11 C 4843, 2013 WL 80372, at *4 (N.D. Ill. Jan. 7, 2013) (Tharp, J.). Indeed, this issue, along with defendants' arguments about the physical abilities test, goes to the merits, not class certification. *See Simpson*, 23 F.4th at 711-12.

Otherwise, to be an adequate representative, the named plaintiffs "must be a member of the putative class and have the same interest and injury as other members." *Santiago v. City of Chicago*, 19 F.4th 1010, 1018 (7th Cir. 2021) (citation omitted). A class representative may be inadequate if she is subject to a defense unique to her, if she has a conflict of interest, or if she has credibility issues. *See id.*; *Stampley v. Altom Transport, Inc.*, 958 F.3d 580, 585 (7th Cir. 2020). Because there is no indication from the parties' arguments that the class representatives will not fairly and adequately protect the interest of the class, the Court concludes plaintiffs have fulfilled Rule 23(a)(4).

*Predominance and Superiority*

Turning to Rule 23(b)(3), the Court must ask whether there are common questions of law or fact that predominate over individual questions and determine if a class action is superior to other

7

available methods of resolving the lawsuit. *See Howard,* 989 F.3d at 597. It is well-settled that the questions of commonality and predominance overlap, *see CTU v. Board of Educ. of City of Chicago*, 797 F.3d 426, 443 (7th Cir. 2015), and in this lawsuit, the predominate common questions of law and fact weigh heavily in favor of class-wide treatment due to the uniform hiring practice involving standardized testing. Answering the question of whether the alleged disparate impact of these standardized tests in the context of a class action, rather than piecemeal litigation, is efficient and fair under the circumstances. *See id.* at 444-45. Plaintiffs have fulfilled Rule 23(b)(3)'s requirements.

Defendants, however, argue that an individualized analysis of each applicant would be required under the circumstances because there are more steps involved in the hiring process than just the standardized tests. More specifically, defendants assert that proof of who would have been hired under the multiple-step hiring process would complicate this class action lawsuit, especially in relation to damages. As the Court explained in an earlier ruling in this lawsuit, in the context of disparate impact cases, Title VII guarantees minorities and women the opportunity to compete equally with white workers based on job-related criteria. *Connecticut v. Teal*, 457 U.S. 440, 451 (1982). Therefore, losing the opportunity to compete equally or being excluded from jobs due to race or gender are actionable injuries. *See id.*; *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988). As such, plaintiffs need not prove that defendants would have hired them as defendants suggest.

**Conclusion**

Based on the foregoing, the Court, in its discretion, grants plaintiffs' motion for class certification in accordance with this ruling.

Date: 8/8/2022

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge

8